[No. 14932.   Department One.   January 9, 1919.]

ISABELLA K. BLOOR, *Respondent,* v. LOREN C. BLOOR
*et al., Appellants.*[1]

DEEDS (17)—DELIVERY — ESCROW — CONTROL.   Sufficient delivery
of a deed is not shown by placing it in escrow with a third party,
if it was still in the control of the grantor and there was no present
intention to part with title.

SAME (17-1)—DEPOSIT FOR DELIVERY ON DEATH—MUTUAL DEEDS.
Since simultaneous deeds of community property by husband and
wife to each other, placed in escrow to be delivered to the survivor
on the death of either, take effect presently, if at all, and since they
negative one another, there can be no effective delivery.

HUSBAND AND WIFE (63)—COMMUNITY PROPERTY—CONVEYANCES
BETWEEN—MUTUAL DEEDS—STATUTES.   Simultaneous deeds of com-
munity property by husband and wife, placed in escrow, the one to
be delivered to the survivor and the other to be null and void or
recalled upon the death of the other spouse, do not, under a liberal
construction of the code, constitute an agreement concerning the
disposition of the community property, within Rem. Code, § 5919,
which authorizes the making of such a contract jointly, and pro-
vides for the manner of its execution and defines its effect; the
statute being exclusive in the absence of any common law right to
make such a contract.

Appeal from a judgment of the superior court for
San Juan county, Pemberton, J., entered May 1, 1918,
upon findings in favor of the plaintiff, in an action to
quiet title, tried to the court.   Reversed.

*Ernest B. Herald,* for appellants.
*Joiner & English,* for respondent.

CHADWICK, J.—On April 24, 1916, J. T. Bloor and
his wife, Isabella K. Bloor, executed several mutual
deeds purporting to convey, the one to the other,
all of the community property then owned by them.
The deeds when executed were given to, or rather
left with, O. J. Bruhns, a justice of the peace, "to

[1]Reported in 177 Pac. 722.

keep.'' Mrs. Bloor testifies, and, of course, it must have been so understood, that the deeds were to be kept until the death of one of the parties, and the appropriate deeds were then to be put on record or delivered to the survivor. It was the intention of Mr. Bloor to arrange the community affairs so as to avoid the expenses of an administration in the event of his wife's death, and to save his wife the like trouble and expense in the event that she should survive him. He had inquired among some of his neighbors and friends and was advised that the better and least expensive way to dispose of his estate would be to prepare ''community deeds.''

After the death of Mr. Bloor, the respondent went to Mr. Bruhns, and with him to the auditor's office and filed the deeds from the deceased husband to the respondent for record. The children of Mr. Bloor by a former wife, the appellants here, having murmured against the title, respondent brought this action to quiet her title to all of the lands described in the deeds.

There is a serious question in the minds of some of the judges as to whether a delivery such as the law demands in cases of this kind was ever had, but we have decided to treat the deeds as if they were in fact delivered within the rule of *Nichols v. Oppermann,* 6 Wash. 618, 34 Pac. 162; *Atwood v. Atwood,* 15 Wash. 285, 46 Pac. 240, and *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042; because we are conscious of the fact that a custom has grown up among the people of this state to fix the status and disposition of community property in a testamentary way by the execution of mutual deeds, the one or the other to be delivered to the survivor in case of death.

We had a similar state of facts in *Eves v. Roberts,* 96 Wash. 99, 164 Pac. 915, in that deeds had been exe-

cuted with like intent. In that case we held that there had been no delivery, but we did raise and leave unanswered the question that occurs in this case.

It is fundamental that a deed will not operate as a conveyance unless there is a present intention to part with the title, although possession may be withheld for a time certain or during the lifetime of the grantor.

"It is essential to the delivery of a deed that there be a giving by the grantor and a receiving by the grantee with a mutual intention to pass a present title from the one to the other. It may be made through the hands of an agent and it may be accepted through the hands of an agent, but there must be a mutual intention presently to pass the title. This mutual intention is the cardinal requisite. . . . This is as essential to a deed of gift as to any other. It is elementary that a deed cannot perform the functions of a will, hence cannot be effectually delivered after the grantor's death. When, however, the grantor delivers the deed to a third person in escrow to be held until the grantor's death and then delivered to the grantee, the grantor retaining no dominion or control over it, the delivery is valid and an immediate estate is vested in the grantee at the date of the delivery in escrow, subject to the grantor's life estate." *Showalter v. Spangle, supra.*

It is not enough that a deed be put in safe-keeping. *Atwood v. Atwood, supra.* It must be put beyond the dominion and control of the vendor so that, as between all parties except purchasers for value and in good faith, the title is presently vested and it can be said, as a matter of law, that it has passed out of the one hand into the other, subject only to the grantor's life estate, which equity will preserve pending the contingency upon which the deed is to be put in the hand of the grantee for record and with right of immediate possession.

Deeds to community property by husband to wife, and by wife to husband, in anticipation of death, are necessarily intended to operate as testamentary bestowals of property. Were the separate property of the grantor involved, or had one member of the community made a deed to a third party, no particular complication would arise, although the question of delivery would occur in almost every case, for those who have direct or collateral interest in the property of deceased persons, and in virtue of their interest have incubated the vice of great expectations, are prone to question the disposition of property where their expectations have not been met.

But the conveyance of community property by the method here employed raises complications which are not so easy of solution. For, although a husband may now deed directly to the wife, and the wife to the husband (Rem. Code, § 8766) if deeds to the same property are executed simultaneously, they must of necessity negative one the other, for they must take effect as of the date they are executed, if they are effective at all. We said in *Eves v. Roberts, supra,* "had they been filed for record at the same time the one would have cancelled the other." The leaving of such deeds with a third party, the one to become effective and the other a nullity in the order of time, cannot change the legal effect of the instruments or give them better standing than if they were executed, delivered and filed for record on the same day. For it is not the future effect, but the present intention, that sustains deeds of gift or of testamentary character. Therefore, it must be held that mutual deeds to the same property cancel the subject-matter, for it cannot be said that one having an entire title—we understand that community property is held by the half, and, by

the whole, subject to division and partition in case of death—can convey by one deed and take by another in the same transaction and establish a new relation to, or change the character of, the title.

Deeds made and delivered, or delivered, although it be to a third party, and put beyond the control of the grantor, are sustained solely upon the ground that they are present conveyances. This result is impossible where husband and wife execute mutual deeds to community property, for, from the very nature of things, one of the two deeds, they being made the one in consideration of the other, must fail and become a nullity, for it is not within the foreknowledge of the parties which one may die, leaving the other surviving.

The common law, so far as it throws light upon our present inquiry, the decisions of this and other courts, and our statutes, compel the holding that this manner of disposing of community property in anticipation of death cannot be sustained, for the transaction is tinctured by an element of weakness which goes to the very marrow of the transaction, for, notwithstanding the written documents, the intention of the parties at the time is that a part of their contract must fail, otherwise they would not have agreed, as of necessity they must have agreed, that one-half of their contract should in the end be a nullity as of the time of its execution.

This same question has arisen in the state of California. In *Kenney v. Parks,* 125 Cal. 146, 57 Pac. 772, the deeds were delivered to a certain bank. The court said:

"Was the delivery of the husband's deed to the cashier sufficient to pass the title to the wife? Upon mature consideration, we have arrived at the conclusion that no title whatever passed. While it is not so expressed in the agreement, yet the intention of

both parties is plain that the party surviving should have his or her deed returned in case the other party should die, and that no title to the property described in the deed of the party surviving should vest. In other words, the plaintiff having survived her husband, her deed is to be returned to her, and the title to her property remain vested in her. Under the law of this state, the title to the property vested presently when the deeds were delivered, or did not vest at all. Yet, as to the plaintiff's property it is apparent that no title ever vested in the husband under her deed. Such being the case as to her property, it is most difficult to see how title to his property, by his deed, ever vested in her. The general principles of law involved in this case are quite fully discussed in *Bury v. Young*, 98 Cal. 446, 33 Pac. 338, 35 Am. St. 186. In the decision of that case many authorities are cited supporting the conclusion declared, and with that conclusion we are entirely satisfied. It is there said: 'The essential requisite to the validity of a deed transferred under circumstances as indicated in this case is that when it is placed in the hands of a third party it has passed beyond the control of the grantor for all time.' In the present case, by the agreement of the grantor and grantee, it was understood that the grantor's deed was to be returned to him upon the happening of a certain event, to wit: The death of the other party. And at this time it may be assumed that the plaintiff's deed has been returned to her or at least has been treated as of no force and effect. In the *Bury* case it is also said: 'In every case where the deed has been declared invalid by reason of the failure of delivery, it will be found that the grantor reserved some rights over the instrument; that upon the happening of some event, or contingency, or condition, he had the right, if he so disposed, to reach out and take it from the possession of the depositary.' The present case comes squarely within that description. Here the grantor reserved the right to recall his deed upon the happening of a certain event; when that event happened, he had the right to reach out and take back the deed, and such reservation is fatal

to a valid delivery. The all-controlling fact in this case, which defeats plaintiff's claim, is that when the deeds were made and delivered to the cashier of the bank the respective grantors did not absolutely part with all future dominion and control over them, but, upon the contrary, the actual intention and understanding of each grantor was that upon the death of the other the survivor should take back his own deed, and that no title vest under it.''

In *Long v. Ryan*, 166 Cal. 442, 137 Pac. 29, it was held that an agreement to return the deed of the survivor was not the disqualifying element, for that the law would imply. The logic of this conclusion cannot be doubted, for whether the deed which has become *nullis juris* is returned under a contract made at the time of its execution, or is left with a third party under an implied contract to return it, can make no difference. So whether we follow the theory of contract, as has the California court, or just put ourselves in the place of the parties and admit that the deed made by the surviving spouse was understood to be without force to convey after the death of the other spouse, we reach the same result.

While not an authority for this case, there is much said in *In re Edwall's Estate*, 75 Wash. 391, 134 Pac. 1041, to bear out our argument. In that case deeds were executed in January. In July the parties made mutual wills. The wills were held void under the statute of frauds. It was contended that the deeds furnished written evidence of the contract which would have otherwise been evidenced by the wills. The court said:

''The trouble with this contention is that these deeds, in this respect, are in exactly the same condition as the wills. They are simple warranty deeds in form, as we have noticed, and prove nothing upon their face other than that they were signed and acknowledged as

the individual deed of each; and, like the wills, the language is wholly devoid of any suggestion that they were executed in pursuance of any such contract as is here relied upon. As deeds they, of course, never became, nor were either of them ever intended to become, effective while both their makers lived. Indeed, it was not intended that the deeds of the survivor ever become effective under any circumstances. Each deed rested for its ultimate effectiveness upon a contingency which might never occur.''

Whether it was because there was no way of logically working out the idea of mutual deeds for community property, the one to fail and the other to become effective after the death of one of the parties, or whether it was to avoid the question that must, in any event, occur in every case, and of its own strength lead to vexatious litigation, we do not know; but we do know that the legislature has passed a law under which contracts of testamentary character may be made by a husband and wife, of and concerning community property.

Spouses having no right to convey, the one to the other, in the absence of legislation (Rem. Code, § 8766), the legislature wisely provided a way by which the parties could contract so as to save their contract from all question of delivery or negation.

''Nothing contained in any of the provisions of this chapter, or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterward to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged, and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and

the same may at any time thereafter be altered or amended in the same manner: *Provided,* however, that such agreement shall not derogate from the right of creditors, nor be construed to curtail the powers of the superior court to set aside or cancel such agreement for fraud, or under some other recognized head of equity jurisdiction, at the suit of either party." Rem. Code, § 5919.

Counsel for respondent have found asylum in this statute. They say:

"These deeds should be construed together, they were made at the same time, constituted one transaction, and when thus considered, we have the husband and wife entering into an agreement concerning the status and disposition of their community real property, to take effect upon the death of either; this agreement is made by the execution of instruments in writing under their hands and seals, acknowledged and certified as deeds of real estate are required to be under the laws of the state. A full compliance with § 5919.

"Give to this transaction the liberal construction required by § 5923 of Rem. Code, and nothing else can be made of it than the making of an agreement in compliance with the provisions of § 5919. There is here every element required in the making of an agreement as to the status and disposition of community real property—their acts are entitled to a liberal construction—and the intent of the parties to consummate the very objects of this section is voiced from the beginning to the end of this record, and this respondent should not be robbed of the result of her and her husband's worthy intentions, simply because there were two instruments instead of one, when under all rules of law the two should and must be construed together, and when so construed, no matter what may be said of the transaction had it not related to community property, it must be held that the title to the real estate in controversy was, at the time of the commencement of this action, in the plaintiff Isabella K. Bloor, free from the claim of these appellants.

"Agreements made in conformity with § 5919, *supra*, are valid contracts. *McKnight v. McDonald*, 34 Wash. 98, 74 Pac. 1060."

It may be granted that the parties contracted as they would have contracted if they had followed the statute, but still respondent cannot prevail, for they have not evidenced their contract in the way the statute has said that it should be evidenced. If our reasoning be correct, there are not two deeds, nor even one legal deed, to evidence the contract, for they can have no more legal effect to voice the contract than on the day they were executed, and that, as we have shown, amounted to nothing, for one and both of the deeds were tainted with a virus that poisoned them to their death, in their inception as well as in their end.

Furthermore, the statute contemplates a contract complete in itself, and in writing. It seems to have been drawn with certain intent to avoid the necessity of oral testimony or proof by fragmentary writings. The instrument drawn to evidence the contract must concern the status and disposition of the property, and must be in writing and under the hands and seals of the parties, and witnessed and acknowledged, if it is to be potent as a deed or a will. The writing must state the terms of the contract. It must be mutual and bilateral. A single unilateral contract—granting that one of the deeds so made is effective, for the other must die with the dead man—will not suffice.

But granting, for the sake of argument, that the deed executed by the deceased spouse would otherwise become operative at death, it still falls far short of the contract intended by the statute, for at best it would evidence no more than the contract of the one party, for as said in *In re Edwall's Estate, supra:*

"They are simple warranty deeds in form . . . and prove nothing upon their face other than that

they were signed and acknowledged as the individual deed of each; and . . . their language is wholly devoid of any suggestion that they were executed in pursuance of any such contract as is here relied upon.''

So far as we are advised, the court has made but two references to § 5919. But we take it that it must have been in the mind of the court, and especially in the mind of the writer of the concurring opinion, in *Board of Trade of Seattle v. Hayden,* 4 Wash. 263, 30 Pac. 87, 32 Pac. 224, 31 Am. St. 919, 16 L. R. A. 530, that the statute having provided a way for the husband and wife to contract with reference to the status and disposition of community property to take effect after death, the way provided is exclusive. Judge Stiles says in the body of the opinion:

''By that section husband and wife, when they attempt to make any agreement as to the *status* or disposition of the community property, must do so by the execution of an instrument in writing, and under seal, which must be acknowledged and certified, as a deed to real estate.''

And Judge Scott says in his concurring opinion:

''This seems to me to clearly preclude the idea of their entering into any such agreement, affecting their property interests to take effect prior to the dissolution of the community, except as expressly provided otherwise.''

In *McKnight v. McDonald,* 34 Wash. 98, 74 Pac. 1060, the law was sustained, but the insinuation that, if the parties are to avoid the making of wills, they should follow the ''special contract provided for by statute,'' is strong.

Counsel contend further that, in any event, respondent is entitled to the half-interest conveyed to her by the husband's deed, absolutely and in fee, and is fur-

ther entitled to a life estate in the remaining half of the property reserved to herself when she executed the deed to her husband. We think this contention has been answered by what has already been said, namely, that the deeds and the manner of their delivery, if there was delivery, do not of themselves establish that the grantor in each passed a present title to the grantee, subject only to a reserved life estate in the grantor, and resort must be had to parol evidence to establish such a condition. The very nature of the transaction carries the presumption that the vesting of title was dependent upon survivorship, and that until the death of one, neither deed should take effect, and then only the deed of the one who had died. As it could not be known before the death of one, which would survive, we have here a parol testamentary disposition attempted, which fails because not in accordance with the statute. The respondent's deed to her husband was not executed with a present intent to convey in any event, but only upon a possible contingency, and therefore lacks an essential element of a deed of gift or testamentary deed; and further, the deed does not purport to reserve a life estate; so that if we give to the deed the effect which is contended for, we would be led into the position of making a new contract which was not in the mind of either party at the time the deeds were executed. The form of the instruments precludes the idea that either party intended to convey anything less than a fee simple title.

Being convinced that the title of respondent cannot be sustained under the deed executed by her husband; that the writing, whether considered as one deed or two deeds, does not evidence a contract such as is permitted under the statute, and that the deed relied on does not vest a life estate in the respondent, we con-

clude that the decree of the lower court must be reversed, and the cause remanded with directions to dismiss the suit.

MAIN, C. J., MACKINTOSH, MITCHELL, and TOLMAN, JJ., concur.