[No. 18048. *En Banc.* April 1, 1924.]

*In the Matter of the Estate of* CARRIE A. MILLER, *Deceased.*

BOARDMAN C. ADAMS, *as Executor, Appellant,* v. R. A. VANDER LAS, *Respondent.*[1]

DEEDS (17)—DELIVERY—ESCROWS—CONTROL—INTENT OF GRANTOR —EVIDENCE—SUFFICIENCY. There was no effective delivery of a deed, sent to a bank for safe keeping by the grantor, who took a receipt from the bank designating the purpose of the deposit; and it is immaterial that the grantor sent the receipt to the grantee, who was bound to understand that there was no delivery with intent to pass title, since such delivery must be clearly shown.

WITNESSES (35, 44)—COMPETENCY—TRANSACTIONS WITH PERSON SINCE DECEASED—PARTY IN INTEREST. Where decedent, after executing a deed, sent it to a bank for safe keeping, an adverse party in

[1]Reported in 224 Pac. 607.

interest and to the record is precluded by Rem. Comp. Stat., § 1211, relating to evidence of transactions with the deceased, from testifying that the arrangement was in keeping with previous ones made with the deceased that the deed was placed in escrow with the bank as an agent to be delivered after the death of the grantor, and that he assumed immediate control of the property, turning over only such proceeds as the deceased immediately needed.

DEEDS (62)—EVIDENCE—CONSIDERATION. Where a deed was by the grantor deposited in a bank for safe keeping, the grantee's evidence that he furnished money constituting a valuable consideration for the deed is immaterial, in the absence of any allegation in the pleadings that he had purchased the property.

PEMBERTON, J., dissents.

Appeal from an order of the superior court for King county, Frater, J., entered March 10, 1923, directing an executor to inventory certain property as belonging to the estate of a decedent. Affirmed.

*John W. Whitham,* for appellant.

*Karr & Gregory* and *H. G. Sutton,* for respondent.

MITCHELL, J.—On November 21, 1917, Mrs. Carrie A. Miller, a resident of Seattle, executed and acknowledged a deed to certain real property in Seattle, naming Boardman C. Adams and Ralph E. Adams, residents of the state of Ohio, as grantees. The deed recited that the property was subject to a mortgage of $2,500 "which grantees are to assume." A week later, November 28, 1917, she executed her last will and testament, by which she devised four lots in the replat of Richmond Beach, King county, to her brother Boardman C. Adams in trust for specific designated uses and purposes, and then devised and bequeathed all the rest of her property, real and personal, to her brother Boardman C. Adams, who was nominated in the will as executor. On April 12, 1918, she caused the deed and the will to be deposited with the Northwest Trust

& Savings Bank in Seattle, where they remained until after her death.

After her death, which occurred in November, 1921, the bank deposited the will with the clerk of the superior court. Boardman C. Adams qualified as executor of the will, upon its being admitted to probate, and thereafter the bank delivered the deed to him, taking his receipt therefor signed by him as executor. The executor did not include the Seattle property in his inventory. This proceeding was instituted by the order of the court to compel him to bring it into the probate proceedings. His answer was that the deed of November 21, 1917, became effective prior to the death of the grantor and that the estate had no interest in the property. The trial court found and adjudged that the property belonged to Mrs. Miller at the time of her death, and this appeal has been taken from that judgment.

There are but two assignments of error, both of which relate to the one question as to whether or not there was a valid delivery of the deed so as to convey title.

The law upon the subject, that is, where the deed is not delivered to the grantee but is delivered into the possession of a third party, is very well set out by former decisions of this court. In *Atwood v. Atwood,* 15 Wash. 285, 46 Pac. 240, the rule was announced that, before the court can find a delivery, the intention to consummate the transaction so as to fully vest the title in the grantee and make it presently operative must be clearly shown. In *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042, it was said:

"It is essential to the delivery of a deed that there be a giving by the grantor and a receiving by the grantee with a mutual intention to pass a present title from the one to the other. It may be made through the

hands of an agent and it may be accepted through the hands of an agent, but there must be a mutual intention presently to pass the title. This mutual intention is the cardinal requisite. . . . This is as essential to a deed of gift as to any other. It is elementary that a deed cannot perform the functions of a will, hence cannot be effectually delivered after the grantor's death. When, however, the grantor delivers the deed to a third person in escrow to be held until the grantor's death and then delivered to the grantee, the grantor retaining no dominion or control over it, the delivery is valid and an immediate estate is vested in the grantee at the date of the delivery in escrow, subject to the grantor's life estate.''

A pretty clear statement of the rule is found in *Rhines v. Young,* 97 Wash. 437, 166 Pac. 642, quoting from 8 R. C. L. 996, as follows:

''The rule sustained by the great weight of authority is that the grantor must not only deliver the deed to a third person for the benefit of the grantee ultimately, and in some way express his intention to that effect, but must also part both with the possession of the deed and with all dominion and control over it.''

In *Bloor v. Bloor,* 105 Wash. 110, 177 Pac. 722, we said:

''It is fundamental that a deed will not operate as a conveyance unless there is a present intention to part with the title, although possession may be withheld for a time certain or during the lifetime of the grantor. . . . It is not enough that a deed be put in safekeeping. *Atwood v. Atwood, supra.* It must be put beyond the dominion and control of the vendor so that, as between all parties except purchasers for value and in good faith, the title is presently vested and it can be said, as a matter of law, that it has passed out of the one hand into the other, subject only to the grantor's life estate.''

Concerning the facts of the case there is no dispute. Boardman C. Adams knew of the deed and the will

prior to the date they were placed with the bank. Mrs. Miller handed the instruments to one, who testified at the trial, with instructions to take them to the bank and deliver them for "safe-keeping." He testified further that, at that time and on other occasions, she said "that she wanted to keep absolute control of her property while she lived and that is why they were to be placed there," and that, on several occasions after they were placed with the bank, she said "that she might want to dispose of the property if she could get her price." He delivered the instruments to the bank on April 12, 1918, and took a receipt from the bank as follows:

"Northwest Trust & Savings Bank
            "Seattle, 4/12 1918.
  "Received from Carrie A. Miller for safekeeping (1) Will of Carrie A. Miller   (2) Warranty Deed Carrie A. Miller to Boardman C. Adams and Ralph E. Adams dated Nov. 21—1917
            "Northwest Trust & Savings Bank
                    "Per Myers Sec."

The receipt was taken to Mrs. Miller, who, without endorsing it, forwarded it to Boardman C. Adams, who kept it until after the death of Mrs. Miller. The officer of the bank who signed the receipt testified that, during all the time the instruments remained in the bank, they were under the control of Mrs. Miller, and that they would not have been delivered to any other person except upon her order. It is clear that the bank did not receive the deed as the agent of either of the parties for the purpose of delivering it to Boardman C. Adams upon the death of the grantor, or at any other time, but under the obligation to her alone for the purpose of safe-keeping. It was so expressed in the writing given by the bank. The bank could not and would not have delivered the deed except upon her personal demand or written order. The arrangement was con-

trary to her retaining no dominion or control over it; and in further proof of the fact that such was the understanding of the bank, when the deed was finally delivered by the bank it was not to Boardman C. Adams, but to him as executor of her estate. He signed a receipt as executor of the estate upon receiving the deed. Nor was the situation altered by the fact that she forwarded the receipt to Mr. Adams. By the very terms of that receipt she represented, and he is held bound to have so understood, not that there had been delivery of the deed with a present intention to part with title to the property, but for safe-keeping for and on behalf of the grantor. In order to pass title to the one named as grantee "it is not enough that a deed be put in safe-keeping." It was received and held by the bank under circumstances and agreement inconsistent with the idea that she no longer retained dominion and control over it, but, on the contrary, that it was subject to her demand or written order.

In addition to the statement in the receipt that the instruments were deposited for safe-keeping, which was faithful to her instructions to the messenger who carried the instruments to the bank, she stated to the messenger, at that time and on several subsequent occasions, that she wanted to keep control of her property, that she might want to dispose of it if she could get her price, clearly indicating control over both the property and the deed.

There are several arguments on behalf of the appellant that are not directly traceable to any assignment of error, though discussed also in the respondent's brief, that may be noticed. They refer to the rejection of evidence and offers of proof refused by the trial court. Mr. Adams testified that Mrs. Miller applied part of the rent on the mortgage by his directions, and was asked if that was in keeping with arrangements he

had previously made with her with reference to the transfer of the property. Objection to the question was sustained. Clearly the question called for testimony of a transaction with a deceased person in the interest of the witness, who was executor and opposed to the estate of which he was the executor, and therefore prohibited by § 1211, Rem. Comp. Stat. [P. C. § 7722]. He also offered the account book of Mrs. Miller in evidence, claiming it showed that he had furnished money to be applied on the mortgage, from which he contended that it constituted a valuable consideration for the deed of conveyance. It was properly objected to as immaterial, there being no allegation in the pleading that he had purchased the property. Thereupon he made a general offer to prove

"That, at the time of the execution of the deed, the property changed to the control of the grantee and he assumed immediate control of the property; that the deed was placed in the bank in escrow as an agent, to be delivered by the agent subsequent to the death of the grantor, for the reason that the arrangement was made by the deceased, who was at the time upwards of eighty years of age, that she should retain possession of the property and so much of the rental as became necessary for her to live on; that all in excess of sufficient for her immediate needs and a livelihood was to be applied in the direction required by the grantee; that that was faithfully carried out from the date of the execution of the deed until the death of the grantor, and the grantor accounting to this grantee for every dollar of rent she received subsequent to the execution of the deed and retaining only sufficient for her immediate needs."

Thereupon opposing counsel said: "We have no objection, if the court please, to counsel proving those facts by proper testimony, but if he expects to prove those facts by this witness, we object." No further offer was made or testimony taken upon the subject.

It must be assumed, therefore, that his offer was to prove the several things mentioned by Mr. Adams, who was then on the witness stand. Indeed, that is manifest from the manner in which and the time at which the offer was made, and clearly § 1211, Rem. Comp. Stat. [P. C. § 7722], just referred to, prohibits such testimony. Boardman C. Adams was a party in interest and to the record; he was an adverse party; he had been ordered to show cause why he should not bring into the estate this property which he claimed to have derived the title to by a conveyance from the person whose will he was acting as executor of. The statute, which provides generally that a person interested in the event of the action shall not be prohibited from testifying, but that such interest may be shown to affect his credibility, then plainly states as follows:

"Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, . . . of any deceased person, or as deriving right or title, by, through, or from any deceased person . . . then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased person."

Upon the whole record we are satisfied the findings, conclusions and judgment of the trial court were correct.

Affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, HOLCOMB, TOLMAN, and PARKER, JJ., concur.

PEMBERTON, J., dissents.