THE PACIFIC NATIONAL BANK OF SEATTLE, AS EXECUTOR OF THE LAST
WILL OF FRANK V. MORGAN, DECEASED, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91048.    Promulgated June 22, 1939.

*W. H. Thompson, Esq.,* and *Harold L. Scott, C. P. A.,* for the
petitioner.

*B. H. Neblett, Esq.,* for the respondent.

OPINION.

KERN: 1. Respondent's inclusion in the decedent's gross estate, under section 302, Revenue Act of 1926, with such additional tax as

may be required under section 401, Revenue Act of 1932, and section 405, Revenue Act of 1934, of the community interest of decedent's surviving widow rests wholly on the waiver which she executed on March 18, 1931, simultaneously with the execution by the decedent of his will and of the testamentary trust transfer; the respondent contending that this act transferred the wife's community property to the decedent during his lifetime and that consequently the entire estate held by the marital community passed at the decedent's death. Since the petitioner admits that the decedent's own one-half of the community property passed at his death and is taxable, no question arises on that. More elaborately stated, respondent's argument is that to treat the wife's community interest otherwise will enable her to transfer her estate at death free of estate taxes; that this object to avoid taxes is implicit in the whole scheme; that the scheme itself is one which has generally been recommended by trust companies in community property states, as is evidenced by the general printed form of the trust instrument employed by the trust company here, and therefore contemplates tax avoidance on a large scale; and he draws the conclusion, it would seem, that the intention to avoid taxes vitiates the transfer.

We believe that we fully appreciate the force of this argument, but it is one which should properly be addressed to Congress. This Board, in so far as it performs a judicial function, may construe the statute so as to accomplish the ends which the statute itself makes plain; cf. *Lucas* v. *Earl*, 281 U. S. 111, and the other cases cited by Cardozo, J., in *Burnet* v. *Wells*, 289 U. S. 670, at 677; but there are necessary limits to judicial discretion, and when those limits are reached, administrative officers must find the stopgap in legislative action. Disregarding the motives, therefore, with which the transfer may have been made, we look to what was actually done and the legal effect of those acts.

All the property in question here was acquired after the marital community had been established and, no part of it having been acquired by the husband by gift, bequest, devise, or descent (§ 6890, Remington's Compiled Statutes of Washington) nor any part so acquired by the wife (§ 6891, *ibid.*); it was all community property (§ 6892, *ibid.*). The husband is given the management and control of community real property but he may not sell, convey, or encumber it "unless the wife join with him in executing the deed", which he and she must both acknowledge. § 6893, *ibid.* The provision on descent of community property is as follows (Remington's Compiled Statutes of Washington § 1342):

§ 1342. Descent of Community Property. Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary

disposition of the deceased husband or wife, subject also to the community debts. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her, or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivors to the exclusion of collateral heirs, subject to the community debts, the family allowance, and the charges and expenses of administration. [Cf. L. '75, p. 55, § 2; Cd. '81, §§ 3303, 2411, 2412; 1 H.C., § 1481.]

Dower and curtesy are abolished, § 1343, *ibid.*; and likewise survivorship between joint tenants, §1344.

The community interest in realty may be transferred by either spouse to the other, as § 10572, *ibid.*, provides:

§ 10572. [8766] Conveyances Between Husband and Wife. A husband may give, grant, sell, or convey directly to his wife, and a wife may give, grant, sell, or convey directly to her husband his or her community right, title, interest, or estate in all or any portion of their community real property. And every deed made from husband to wife, or from wife to husband, shall operate to divest the real estate therein recited from any or every claim or demand as community property, and shall vest the same in the grantee as separate property. The grantor in all such deeds, or the party releasing such community interest or estate, shall sign, seal, execute and acknowledge the deed as a single person, without the joinder therein of the married party therein named as grantee: Provided, however, that the conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift, or conveyance: And provided further, that any deeds of gift conveyances or releases of community estate by or between husband and wife heretofore made, but in which the husband and wife have not joined as grantors, said deeds, where made in good faith and without intent to hinder, delay, or defraud creditors, shall be and the same are hereby fully legalized as valid and binding. [L. '88, p. 52, § 1; 1 H.C., § 1443.]

Section 6894 provides specifically for the mode of transfer of any community property by one spouse to the other, as follows:

§ 6894. [5919] Agreements as to Status of. Nothing contained in any of the provisions of this chapter, or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status of disposition of the whole or any portion of the community property, then owned by them or afterward to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged, and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: Provided, however, that such agreement shall not derogate from the rights of creditors, nor be construed to curtail the powers of the superior court to set aside or cancel such agreement for fraud, or under some other recognized head of equity jurisdiction, at the suit of either party. [Cd. '81, § 2416; 1 H.C., §1401.]

The decedent in his will declared (art. 5th) that he was disposing of "not only any separate estate I may have at the time of my death but also all the community property and estate of myself and my said

wife, including the community interest and share of my wife therein, to all of which my said wife has consented and has elected to take under this will by written instrument executed by her and bearing date the 18th day of March, 1931." The decedent's wife in her waiver executed on the same day declared this likewise to be her intention, electing to take under the will, and waiving all claims to her share of the community property. This waiver she on the same day duly acknowledged before a notary public.

Petitioner urges that section 6894 has provided an exclusive method of transfer of community property between spouses and that its requirements have not been complied with, citing *Bloor* v. *Bloor*, 105 Wash. 110; 177 Pac. 722. Respondent relies on *Sponogle* v. *Sponogle*, 86 Wash. 649; 151 Pac. 43; *Shea* v. *Commissioner*, 81 Fed. (2d) 937, and other cases to support an opposite conclusion. We do not think it necessary, however, to discuss or decide the question whether an effective transfer under local law could have been made by decedent's wife to him during his lifetime by the means she employed. The wife's transfer to the trustee has been treated as effective, it may be noted, by all parties concerned, and we may assume in respondent's favor that a transfer to the husband by the same means would have been effective. We can not on that account, however, conclude the case for the respondent, for we must look to what the waiver sought to accomplish and, on our assumption that the proper statutory forms were employed, did accomplish.

The wife's transfer of her interest in the marital community to her husband was not a present outright transfer to him, such as respondent attempts to spell out, but a transfer in trust to named trustees, under the fourth article of the will by which decedent disposed of the residue of his estate by a transfer in trust, the wife's transfer in trust being limited by the condition precedent that her husband predecease her. The husband created a testamentary trust, the wife made a gift in trust *inter vivos* on the condition named. A recent writer on the subject, cited by petitioner's counsel, has concisely stated the conclusion to be drawn in respect of the analogous state inheritance law when he says:

> * * * For it is manifest that at the time of the death of the husband, under a will such as we are here discussing, the state is in no position to levy any tax whatever upon the wife's half of the community property.
>
> Before the state can plausibly make such an attempt, a further voluntary and affirmative action on the part of the wife is required. In other words, she must agree and consent, either by a formal written acceptance of the will and relinquishment of her interest in the community property, or by virtue of an estoppel, that her half of the community property shall, along with the husband's half, be turned into the trust. But this amounts to nothing more than a conveyance by the wife to the trustee, after the death of the husband, of her interest in the community property. The fact that the entire community

property finds its way into the trust does not mean that the trustee of the beneficiaries under the trust receive the property by will or inheritance; it simply means that one-half of the community property goes to the trustee for the benefit of the named beneficiaries by virtue of the will of the husband, and the other half of the community property goes into the trust because of the voluntary and, what clearly seems to be, the legally affirmative act of the wife. [Judson F. Falknor, 5 Wash. Law Review 55, at 63 (1930).]

Our decision in *Coffman-Dobson Bank & Trust Co., Executors*, 20 B. T. A. 890, supports the same conclusion and involves facts very similar to those here. There:

The last will of the decedent disposed of his own estate, which, under the laws of the State of Washington, is ½ of the aggregate property, and further provided that if the widow would permit her property to be placed in trust and be disposed of ultimately, as directed by the decedent, she would receive the income from the whole estate. The widow elected to take under the will.

As thus submitted we have for determination a single issue of law, viz., Does the act of a widow in placing her part of community property in a trust created by the will of her deceased husband, in consideration of a condition in said will giving her the income from the trust, which also included the interest of the decedent, vest, *ad interim*, her part of such property in the decedent's estate, so as to subject it to the Federal estate tax?

After briefly reviewing the necessary procedure under Washington law to effect a transfer from wife to husband of community property, we concluded at page 891:

There is no claim here that the decedent required, or that the widow attempted to accomplish, a transfer of her interest in the community property to the former's estate if, by such informal procedure as indicated, it could have been done. The only condition specified by the will was that the widow *permit her property to be placed in trust*, and it was this condition to so permit it to be placed that she accepted in the election made. Without passing upon any hypothesis not before us as to what might have been done had the parties so intended, it is clear, under the facts here shown, that the interests of the widow in the property put in trust passed direct from her to said trust, and that it at no time was a part of the taxable estate of the decedent.

The respondent seeks to distinguish this case, but we find nothing different in substance from the instant case. We are unable to accept his suggestion that the arrangement there was "an ordinary election" by the widow between her right to take by descent or under the will. Such an election is ordinarily made after the testator's death and while the will is in probate, not by an agreement *inter vivos* between the testator and his wife. There is nothing in the *Coffman-Dobson* case to indicate that the wife's consent or waiver was not absolute, as respondent contends, but even if it were so in that case and not so here, we still think that in the instant case the wife's waiver created no present property interest in her husband and did no more than create a trust effective only on the condition precedent that her husband predecease her.

On the first point, therefore, we hold for petitioner.

2. The respondent contends that the proceeds of decedent's life insurance to the amount of $2,085.50, which was the sum of the expenses of the decedent's last illness and burial, should be included in the gross estate. There is no dispute over the amount. Respondent insists that since these proceeds were subject, under article 9(a) of the trust agreement, to "the expenses of the last illness and burial of the Trustor", an equivalent amount should be added to the gross estate. It is contended that the policy proceeds, although not expressly includable as such under section 302(g), Revenue Act of 1926, since they are payable to beneficiaries other than the executors and are not in excess of $40,000, are includable as part of the estate as being subject to charges against the estate, expenses of administration, or to distribution; includable, that is, to the extent used for these purposes. The insurance proceeds, it is said, were used to the extent mentioned for the benefit of the estate, and as such are subject to the estate tax. *Marmaduke B. Morton, Administrator*, 23 B. T. A. 236, is relied on. Petitioner contends that the decedent's funeral expenses and expenses of his last illness had in that order priority under Washington law (§ 1541, Remington's Statutes) over all other expenses; and that they were in fact paid out of the general and not the trust estate. Petitioner also relies on the direction in decedent's will that "I direct that all my just debts and funeral expenses be paid as soon after my decease as conveniently may be." It is obvious that this direction is insufficient to alter the prior express direction in the trust deed, and, since the insurance proceeds were in law subjected to the charge in question, it is immaterial that they were in fact paid otherwise.

We think it is clear on the authority of that case that, notwithstanding the fact that the proceeds here were not payable to the bank as executor but as trustee, they were subjected by the trust agreement to the charges in question and to that extent and on that account are properly includable in the gross estate.

It does not appear from the record of this case when the insurance policies were issued nor whether the premiums were paid from community funds. Therefore no question is presented similar to those involved in *Lang* v. *Commissioner*, 304 U. S. 264, and *Elizabeth C. McCoy, Administratrix*, 39 B. T. A. 822.

3. A further question is raised by the respondent in respect of the deduction properly allowable for the decedent's last illness and burial. It is said that if we hold that only the decedent's half of the marital estate passed at his death, only one-half of the sum claimed for such expenses, $2,085.50, is allowable as a deduction. The additional deficiency thus claimed has been properly pleaded in the respondent's

amended answer; and since its correctness is admitted by the petitioner in its reply brief, we sustain the respondent on this point. Cf. *Lang's Estate* v. *Commissioner*, 97 Fed. (2d) 867.

*Decision will be entered under Rule 50.*