[No. 22159. Department Two. June 10, 1930.]

ARTHUR B. DRINKWATER et al., Plaintiffs, v. IDA
HOFFEDITZ et al., Appellants, WREN HOWARD
. et al., Respondents.[1]

C. A. McCabe, for appellants.
M. S. Jamar, for respondents.

FRENCH, J.—One Arthur Bloomfield, prior to his death, owned certain real property in the vicinity of Pomeroy, Garfield county, Washington. On April 9, 1918, Mr. Bloomfield executed deeds to all of the real property which he owned, the grantees in such deeds being his children. These deeds were placed in an envelope, delivered to, and left with, the Garfield County Abstract Company, the envelope containing the deeds having indorsed thereon the following written escrow instructions.

"Deeds left in escrow, April 9, 1918, with Garfield County Abstract Co. by Arthur Bloomfield to be delivered to the respective grantees, named in said deeds after the death of the grantor, Arthur Bloomfield.

"Said Arthur Bloomfield hereby releasing all

[1]Reported in 288 Pac. 919.

dominion over the inclosed deeds, except in case of the death of Frank Bloomfield or Lulu L. Kimble or Ida Hoffeditz, the grantees named in the inclosed deeds, in which case grantor reserves the right to make new deeds in lieu thereof. (Signed) Arthur Bloomfield.''

Mr. Bloomfield died in the month of March, 1926. The deeds were then delivered to the grantees named therein and by them recorded. Thereafter, in an appropriate proceeding, the question arose as to whether or not title had been conveyed by such deeds. All other facts sufficiently appear in the following very able memorandum opinion prepared by the trial court, reading as follows:

''The issue in this case is whether Ida Hoffeditz and Lulu L. Kimble are entitled to certain money in the custody of the court, resulting from the sale of property in the city of Pullman; or whether defendants Howard, minor heirs of Arthur Bloomfield, are entitled to share therein.

''Arthur Bloomfield owned the property prior to his death, and on April 9, 1918, executed a deed to an undivided one-half interest to defendants Hoffeditz and Kimble, placing it in the hands of Harry L. Chard, to be delivered to the grantees after Bloomfield's death.

''Bloomfield died long before the commencement of this action, whereupon the deed was delivered to the grantees, and was duly recorded. Afterwards plaintiffs, who had in the meantime acquired an interest in the property, began the present suit in partition, resulting in the sale of the property and proposed division of the proceeds. Defendants Hoffeditz and Kimble answered, claiming ownership under the deed; a guardian *ad litem* was appointed by the court for the minor defendants, grandchildren of Bloomfield, who was also answered, claiming an interest as heirs of Bloomfield, on the theory that the conveyance delivered by Bloomfield to Chard was void.

''The matter came on for trial to the court and testimony was received, including that of Mr. Chard, the holder of the escrow.

"The deed, which was prepared by Mr. Chard and signed by Mr. Bloomfield, was placed in an envelope together with other deeds and some war savings stamps. Chard, after conversing with Bloomfield wrote upon the envelope containing the deeds and Bloomfield signed, the following:

" 'Deeds left in escrow—April 9, 1918—with Garfield County Abstract Co. by Arthur Bloomfield to be delivered to the respective grantees, named in said deeds after the death of the grantor, Arthur Bloomfield.

" 'Said Arthur Bloomfield hereby releasing all dominion over the inclosed deeds, except in case of the death of Frank Bloomfield or Lulu L. Kimble or Ida Hoffeditz, the grantees named in the inclosed deed, in which case grantor reserves the right to make new deeds in lieu thereof.

" '(Signed) Arthur Bloomfield.'

"Mr. Chard was permitted over objection to testify to the conversation between himself and Bloomfield immediately preceding the execution and delivery of the deeds, for the purpose, as stated by counsel, of learning Bloomfield's intention in connection with the deposit of the escrow; this on counsel's theory that the writing is ambiguous.

"The question involved here has been before our supreme court several times, and has been passed upon by the various courts of the other states. While the decisions are not always uniform, there are certain basic rules applicable to this case that have been strictly adhered to, as I take it, by all the courts. More or less relaxation has been evident in some of the cases, but these well defined principles have guided the courts in practically all the decisions.

"1. Delivery of the deed must not only be made to a third person for the benefit of the grantee, *but the grantor must part with its possession and all control and dominion over it.*

"It is said by Mr. Justice Parker in *Rhines v. Young,* 97 Wash. 437, citing 8 R. C. L., p. 996:

" 'The rule sustained by the great weight of authority is that the grantor must not only deliver the deed

to a third person, for the benefit of the grantee ultimately, and in some way express his intention to that effect, but must also part with the possession of the deed and with all dominion and control over it.'

"2. That the conveyance may be effective, it must 'presently pass title;' that is, title must pass to the grantee *at the time of delivery of the deed to the escrow holder.*

"This requisite is suggested in *In re Miller's Estate,* 129 Wash. 211-13; *Showalter v. Spangle,* 93 Wash. 326-32.

"I cannot find that the court has in any of the decided cases, announced a change or modification of these requirements.

"Did Bloomfield part with all control and dominion over the deed when he delivered it to Chard? I can not so find. He specifically retained such dominion and control, effective 'in case of the death of Frank Bloomfield, or Lulu L. Kimble or Ida Hoffeditz, . . . in which case the grantor reserves the right to make new deeds in lieu thereof.'

"I can not construe this escrow provision as terminating grantor's control of the deed.

"Counsel for the grantees insists that the explanation of the witness Chard appearing in the testimony clears the situation and shows the intent of the grantor in using the words 'reserves the right to make new deeds in lieu thereof.'

"While witness Chard was permitted to testify to Bloomfield's intention at the time of executing and depositing the deed, the court is inclined to disregard this testimony.

" '. . . And when the only instructions are in writing, the effect of the transaction depends on the construction of the writing, and becomes a pure question of law upon which anything said by the grantor to third persons, expressive of his intentions and wishes, is immaterial.' 8 R. C. L. 997.

"To be sure counsel insists that the escrow writing is ambiguous but considered as a matter of law I can see no ambiguity. Counsel thinks the ambiguity lies in the words 'in lieu thereof,' but this expression has

such an ordinary and usual meaning, especially in connection with the other words on the envelope, that it seems impossible to say there is ambiguity. The words simply mean, in place of, or instead of, the deeds.

"As I view the case neither horn of the dilemma is available to the grantees. Even assuming that the court may consider the testimony of Mr. Chard as to the grantor's intention, how can it avail the grantees? The very fact that Bloomfield retained control of the deed that he might in case of the death of either grantee substitute a new deed to a successor, would defeat the passing of title *at the time of the delivery of the deed to Chard.* So that in either event, whether the writing is to stand as written and without oral explanation, or whether it be considered explained by the escrow holder, the deed must fall.

"Counsel for the grantees insists that as Bloomfield was dividing his property among relatives, and this intention was clearly shown by the escrow and the testimony of Mr. Chard, the court should make it effective; but this would violate those settled rules governing cases of this character, as well as do violence to the law pertaining to the passing of estates by will.

"Counsel has recited some Illinois cases, in one of which the rule is announced that 'the delivery must be unconditional unless in escrow,' but I can not harmonize this with the general rule as found in the text-books and as adopted by our supreme court.

"Counsel also suggests that since neither Frank Bloomfield, Lulu L. Kimble, nor Ida Hoffeditz died prior to the death of Arthur Bloomfield, the grantees must of necessity take under the deed as if words of limitation had not been incorporated in the escrow; but it all goes back to the requisites heretofore mentioned—the present passing of the title and the lack of absolute control and dominion in the escrow holder.

"Counsel for the grantees places reliance upon the fact that after the execution and delivery of the deed, at a time when an offer was made to purchase the property, Mr. Chard as Bloomfield's agent declined to sell the property, but I think this falls within the rule suggested in the case of *Adams v. Harris,* 118 Wash.

189, where the fact that the escrow holder at the trial answered that she would have returned the deed to the grantor had he requested it, is immaterial, the testimony and the circumstances showing an absolute unconditional delivery of the deed when first lodged with the escrow holder.

"Necessarily the questions connected with this class of case are technical. The common law did not recognize this method of delivery. There is no statutory provision covering it. It is a creature born of necessity and vitalized by courts of equity, and as I view their pronouncements the deed here involved is ineffective.

"I have not cited all the texts and cases examined, but am confident the great majority sustain the holdings here expressed.

"A valuable note may be found in 52 A. L. R., beginning on page 1222.

"I conclude that the deed from Mr. Bloomfield to Mrs. Hoffeditz and Mrs. Kimble was not delivered, and that therefore the distribution of the proceeds of the sale of the property must result as if no deed had been made."

As indicated, there is some apparent conflict in the cases cited from the different courts in the exhaustive note in 52 A. L. R. 1222, but this conflict is more apparent than real, and our own cases abundantly sustain the conclusion reached by the trial court.

We have therefore adopted the memorandum opinion of the trial court as our opinion.

Affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and MAIN, JJ., concur.