[No. 24973. *En Banc.* May 21, 1935.]

*In the Matter of the Estate of* MATTIE A. HAMILTON, *Deceased.*

M. L. HAMILTON, *Appellant,* v. LORRAINE KENTON *et al., Respondents.*[1]

[1]Reported in 45 P. (2d) 36.

82

*Shorett, Shorett & Taylor,* for appellant.

*William H. Pemberton, Todd, Holman & Sprague, Lucien F. Marion, Byers & Byers, Alfred J. Westberg,* and *Paul Shaffrath,* for respondents.

BEALS, J.—M. L. and Mattie A. Hamilton intermarried during the year 1899, and remained husband and wife until January 31, 1930, when Mrs. Hamilton died, aged eighty years. She left a will, dated November 25, 1929, which was admitted to probate February 10, 1930, the appointment of Mr. Hamilton as executor thereof being then confirmed. Mrs. Hamilton had no children, and bequeathed to friends and relatives the aggregate sum of $7,050, the largest bequest being in the sum of $3,500 to Lorraine Kenton, a young woman whom Mr. and Mrs. Hamilton had practically brought up from girlhood, although they never legally adopted her. Mrs. Hamilton bequeathed the residue of her estate to her husband, and provided that the bequests be paid within three years.

Mr. Hamilton, February 26, 1930, filed his inventory of the estate, which was appraised in the total amount of $40,460, all of the property being listed as community, save one tract of real estate upon which was located a store building known as the "Bee Hive," which was described as Mrs. Hamilton's separate estate. It appears that the inventory contained errors by which the total appraised value of the estate should be reduced by $5,500. May 23, 1933, Mr. Hamilton petitioned the court for an order striking from the inventory four parcels of real estate, alleging that they were his separate property and erroneously inventoried by him as pertaining to his wife's estate. It appeared probable that, if Mr. Hamilton's petition were

granted, Mrs. Hamilton's estate would be insufficient to pay in full the bequests contained in her will, and her legatees filed objections to the allowance of Mr. Hamilton's petition.

The issues having been regularly made up, a trial was had to the court, which resulted in an order denying Mr. Hamilton's petition, from which order he has appealed.

Appellant assigns error upon the entry of the order refusing to strike the property from the inventory and refusing to quiet his title to the parcels of real estate described in his petition as against Mrs. Hamilton's estate; error also being assigned upon the refusal of the trial court to permit the case to be reopened for the purpose of taking further testimony.

The following facts appear from the record: The lot known as the "Bee Hive" property was inherited by Mrs. Hamilton from her mother, and was undoubtedly her separate property. Mr. Hamilton testified that in 1903 he built the Bee Hive store, but no claim has ever been made that, by reason of improving Mrs. Hamilton's lot, either Mr. Hamilton or the community acquired any interest in the real property upon which the store was constructed. Appellant testified that, during the year 1921, he had typhoid fever and was very ill for two or three months, so sick that he considered his recovery doubtful; that, during this illness, he instructed a friend of his, one Roy Wilson, a real estate man and notary public, to prepare a deed conveying to Mrs. Hamilton the parcel of real estate here in question; that he signed and acknowledged the deed and gave it to Mrs. Hamilton, saying: "Mother, here's a deed to you in case of anything I don't make it, you will have this property and you will have no trouble about it;" that Mrs. Hamilton objected to receiving the deed, saying: "Why did you do that? I don't

want it that way;'' whereupon appellant took the deed to the bank, with instructions to have the same recorded, which was promptly done. The deed from Mr. Hamilton to his wife was in form a statutory warranty, containing the following paragraph:

''The grantor being the husband of the grantee, it is his intention to convey to his said wife all of his community interest in and to the above described property the same to remain her own and separate property free from any community interest whatsoever.''

Appellant further testified that, two or three days later, his wife handed him a deed covering the same property (which had also been prepared by Mr. Wilson), saying:

''Now here, I am not going to have it that way at all. This deed is yours, and I want you to have it. I am older than you are, and the chances are you are going to get well, and your chances on life is better than mine. I want you to have the property,''

to which appellant replied: ''You should not have done it,'' continuing: ''I won't file it until I see how I get, whether I get well, or what happens to me.'' The deed from Mrs. Hamilton is in the record, bearing date June 1, 1921, one day later than the deed from Mr. Hamilton to her.

Appellant testified that, during the month of December following, the subject of the deed was discussed between his wife and himself, and she told him to file the deed, that he was the one entitled to the property and she wanted him to have it, whereupon the deed was filed for record. In this connection, it should be noted that no objection was made to appellant testifying to conversations between himself and Mrs. Hamilton. Appellant testified that he did not again see the deed until shortly before he filed his petition to strike the property from the inventory, when a friend of his found the deed in his office with other papers belonging

to appellant, and delivered the same to him. The deed is in form a statutory warranty, and contains the following clause:

"The grantor being the wife of the grantee, it is her intention to convey to her said husband all of her community interest in and to the above described property, the same to remain his own and separate property, free from any community interest whatsoever."

It is admitted that, after 1921, Mr. and Mrs. Hamilton continued as they had before in the management and control of the several tracts of real estate, occupying the home property, collecting rents from the "Bee Hive" grocery store and installments on a contract for the sale of one of the tracts. Two witnesses, friends of Mrs. Hamilton, testified that she had told them that she had deeded the property to her husband, one of the witnesses stating that she said:

"We have accumulated this property together, and I think it would be a bad idea to break it up at this time, and I have given him the deed to the property and he can do what he is a mind to with it when I am gone."

Appellant argues that the reference in the deed from Mrs. Hamilton to her husband (which we shall refer to as the second deed) to "her community interest" was included in the instrument by the scrivener without comprehension of their nonapplication to the situation, the words being, of course, inappropriate if the property was, on the date of the second deed, Mrs. Hamilton's separate property by reason of the conveyance thereof to her by her husband the day before. Both parties question the sufficiency of the delivery of the first deed, from Mr. Hamilton to his wife. Appellant contends that the evidence does not show any legal delivery of this instrument. He denies, however, that the deed was intended as a testamentary disposition of

his interest in the property. Appellant vigorously contends that the evidence shows that the second deed was delivered, and constitutes a valid transfer to appellant of the title to the property therein described.

Appellant, by deposition prior to the trial, testified concerning the two deeds above referred to, concerning the second deed stating that the same was given him by his wife a short time after the execution of the first deed from him to her:

"She said she had done it. She gave me the deed, and I didn't have it recorded because I was sick and I didn't know whether I was going to pull through for several months. After that I had it recorded."

He further testified in answer to the following question: "Q. You say that you each executed these deeds because you wanted the survivor to have the property rather than anyone else? A. Yes, sir." Later in the course of his deposition appears the following:

"Q. Was the ownership of this property—any of your property—ever discussed between you and Mrs. Hamilton at any time between the execution of these deeds up to the time of her death? A. How was that again? Q. Was the ownership of this property discussed by you and Mrs. Hamilton? A. No. Q. Wasn't discussed at all? A. No, we always considered it community property. It was always considered such."

At the trial, appellant testified that he had always claimed the property as his under the second deed, but the inconsistency in his testimony should be construed against him.

Appellant testified that he was at all times aware of the execution of the two deeds above referred to, but, notwithstanding this, he inventoried, as belonging to the estate, all the property covered thereby, except one tract which had been sold during Mrs. Hamilton's lifetime. While it is true that an executor

or administrator, who by mistake or inadvertence includes his own property in an inventory of the property of the estate, is not estopped from later moving to strike the same therefrom *(Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107), the fact that appellant described the property in the inventory as belonging to the estate, and permitted it to stand under that description for three years, is some evidence as to what his understanding of the situation actually was. In this connection, it is proper to state that we find here no element of estoppel which operates against appellant. The question is to be determined upon the evidence without consideration of the doctrine referred to.

Upon the question which arises as to the nature of the deeds, the following authorities are in point: In the case of *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042, it was held that deeds from a mother to her son and daughter-in-law, respectively, were not shown by the evidence to have been delivered as accomplished gifts, no mutual intention to pass a present title appearing, such mutual intention being the cardinal requisite of such a deed. In the course of the opinion, this court said:

"In every case there must be something from which it clearly appears that there was an intention to make the deed a presently operative conveyance vesting title in the grantee within the grantor's lifetime. *Atwood v. Atwood,* 15 Wash. 285, 46 Pac. 240; *Fain v. Smith,* 14 Ore. 82, 12 Pac. 365, 58 Am. Rep. 281."

In the case of *Bloor v. Bloor,* 105 Wash. 110, 177 Pac. 722, it was held that mutual deeds, executed by husband and wife and placed in escrow to be delivered to the survivor on the death of either, had never been delivered, and were ineffective for any purpose. The court called attention to the self-evident proposition that, if mutual deeds are executed simultaneously,

". . . they must of necessity negative one the other, for they must take effect as of the date they are executed, if they are effective at all."

It clearly appears that the deed from appellant to his wife, the first deed above referred to, was made in contemplation of his possible decease. As above quoted, appellant testified that he stated to Mrs. Hamilton: "Here's a deed to you in case of anything I don't make it. You will have this property, and you will have no trouble about it." The deed was executed, then, to be effective only in case Mr. Hamilton should die in the course of the illness from which he was then suffering. Mrs. Hamilton objected to the deed and in effect repudiated it, saying, according to appellant: "I dont want it that way. I am going to deed it back to you," which she promptly proceeded to do. Mr. Hamilton recovered from his sickness, and from that time on he and his wife, as he testified, "always considered it community property." They both participated in the management of the property and the collection of rents. Mrs. Hamilton made her will, it appearing from the record that Mr. Hamilton was present when the will was made, knew about the same, and made no objection thereto, making bequests which, if she had no claim upon any of the real property here in question, were probably in excess of the net amount of her estate.

From the evidence, it must be held that the two deeds must be considered together. The making of the first deed was the occasion for the execution of the second. Appellant admits that the second deed contains inappropriate language in referring to Mrs. Hamilton's community interest, and argues that the conveyancer, who was a layman, used the technical expression without understanding its correct meaning. Manifestly, not only the wording of the deed, but the

plans followed by the parties, were irregular and have resulted only in a confused situation, which the courts have been called upon to solve and which must be determined upon evidence which is far from satisfactory.

Appellant twice testified that he did not record the second deed until the month of December following its execution, stating that he told his wife when she handed it to him that he would not file it until he had recovered his health, probably with the idea that, if his illness should terminate fatally, the deed which he had made to Mrs. Hamilton, and which she had repudiated, would stand, and that nothing would then be said about the second deed from her to him. It must also be remembered that, in talking to the family friend who testified as a witness on behalf of appellant, Mrs. Hamilton, in referring to the deed to her husband, stated: "He can do what he is a mind to with it when I am gone." These words indicate, if anything, some idea on her part that Mr. Hamilton's absolute rights over the property would commence at her death. If the deed had taken effect at the time of its execution, appellant was at perfect liberty to do what he liked with the property at any time thereafter.

The burden rests upon appellant to prove by a preponderance of the testimony the allegations of his petition, which allegations are inconsistent with practically all of his prior actions and statements.

We hold that the two deeds must be construed together, constituting practically one transaction, and that appellant has failed to bear the burden which rests upon him to prove that the deed from Mrs. Hamilton to himself vested in him title to the real estate which he seeks to have stricken from the inventory. Indeed, the evidence preponderates in favor of the proposition that the deeds were intended to operate

only in case of death, and were not intended to pass any present title.

Appellant assigns error upon the refusal of the trial court to reopen the case for the taking of further testimony. We find no reversible error in this regard. The granting of the application rested largely within the discretion of the trial court, and the testimony was largely, in its nature, cumulative; it also appearing that the failure to produce the witness whose testimony appellant desired to introduce was rather due to appellant's lack of diligence than to excusable neglect.

Finding no error in the record, the judgment appealed from is affirmed.

MILLARD, C. J., MAIN, MITCHELL, BLAKE, GERAGHTY, and STEINERT, JJ., concur.

HOLCOMB, J. (dissenting)—I am obliged to emphatically disagree with the prevailing opinion in this case, which utterly disregards our statutes and ignores our precedents, and they are not discussed. It should never become the law of this state. In one thing only is it correct, and that is that the first deed was not accepted or delivered. *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042.

The deed is in our statutory form. Rem. Rev. Stat., § 10552 [P. C. § 1908-29]. It was also authorized by Rem. Rev. Stat., § 10572 [P. C. § 1443], which provides for conveyances from a husband to his wife and from a wife to her husband.

The first cited section, among other things, provides that the grantor warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his

heirs and personal representatives, as fully and with like effect as if written at full length in such deed.

The last cited section, so far as material to this question, reads:

"A husband may give, grant, sell, or convey directly to his wife, and a wife may give, grant, sell, or convey directly to her husband his or her community right, title, interest, or estate in all or any portion of their community real property. And every deed made from husband to wife, or from wife to husband, shall operate to divest the real estate therein recited from any or every claim or demand as community property, and shall vest the same in the grantee as separate property."

There was no mutuality in the deeds from Hamilton to Mrs. Hamilton and the second deed from Mrs. Hamilton to Hamilton, as was the case in *Bloor v. Bloor,* 105 Wash. 110, 177 Pac. 722, cited by the majority, where the deeds were, in fact, placed in escrow with a third party and were still in the control of the grantor. There, the deeds were patently deposited to be delivered to the survivor on the death of either, which was not the case here. To hold that the two deeds in question here constitute one transaction and must be construed together, is illogical and fallacious.

The second statutory warranty deed conveyed *all* of the interest of the grantor, unless expressly limited, and the special language used in the deed of Mrs. Hamilton to Hamilton, a day later than the first deed, is not a limitation.

In *Shorett v. Signor,* 58 Wash. 89, 107 Pac. 1033, we held, in effect, that, under § 10572, *supra,* then codified as Rem. & Bal. Code, § 8766, since the community is an entity separate and distinct from either spouse, the legal effect of a deed from one member of a marital community to the other is to convey the community property and title to the spouse who is vendee, so that

it becomes, or is converted into, his or her separate property, in which the community as such ceases to have any further title or interest, such conveyance being authorized by the statute.

In *Brown v. Davis,* 98 Wash. 442, 167 Pac. 1095, the husband, owning separate real estate acquired before marriage, conveyed it to his wife on July 15, 1914. On the next day she reconveyed the property to her husband. That was exactly the same situation as here. No member of this court then thought that the deeds were contemporaneous, or mutual. We there reaffirmed the law as declared in the *Shorett* case, *supra,* and that such a deed reconveyed the entire estate, whatever it was, to the grantee.

Those cases ought to be decisive under our statutes, and the matter should be considered settled thereby.

The majority also illogically deduce the inference from a certain course of conduct in dealing with some of the property by the Hamiltons, after the second deed was executed, that it was treated as community property.

There, again, the majority fly in the face of precedents. In *Chapman v. Edwards,* 113 Wash. 224, 193 Pac. 712, we held that community property became the separate property of the wife by virtue of deeds from her husband, pursuant to the statute, and the separate nature of her estate was not changed by the fact that her husband thereafter joined with her in the execution of a mortgage. In other words, that even so solemn an act as the joinder in a mortgage, which would seem to be one of the highest forms of inconsistency of act or conduct that could be taken, did not change its character as her separate property.

In *Rogers v. Joughin,* 152 Wash. 448, 277 Pac. 988, it was again very positively declared that the status of

the property, whether separate or community, is to be determined as of the date of its acquisition; that, if the property is once shown to have been separate property, the presumption is that it continues separate property until that presumption is overcome by evidence; that the rents, issues and profits of such property remain separate property; and that the character of property cannot be changed from that of separate property to community property, or community to separate, by the oral agreement of the spouses alone.

The first deed not having been delivered, but in fact rejected by Mrs. Hamilton, as conceded by the majority, the second deed became effective when delivered. It also was recorded about seven months later. The second deed, having been delivered and becoming effective, contained this clause:

"The grantor being the wife of the grantee, it is her intention to convey to her husband all of her community interest in and to the above described·property, the same to remain his own and separate property, free from any community interest whatsoever."

It was manifestly intended to reconvey to appellant what had been attempted to be conveyed by him to Mrs. Hamilton. It was as much an independent and separate conveyance as if it had been executed a year or ten years later, instead of one day later, just as in the *Brown* case, *supra*. The second deed obviously intended, as it stated, that all of the property was "to remain his own and separate property, free from any community interest whatsoever." No more positive and comprehensive language could have been used.

For the foregoing reasons, I dissent. The judgment should be reversed.

TOLMAN, J., concurs with HOLCOMB, J.