[No. 25785. Department Two. November 6, 1935.]

M. F. MATHEWSON, as *Administrator, Appellant,* v. THOMAS M. SHIELDS *et al., Respondents.*[1]

[1]Reported in 50 P. (2d) 898.

*Ballinger, Clark, Mathewson & Force,* for appellant.

*Henry W. Parrott,* for respondent Shields.

*Peyser & Bailey (John D. Cartano,* of counsel), for respondent Ewer.

MAIN, J.—The plaintiff, as administrator of the estate of Allen E. Williams, deceased, brought this action to set aside two deeds to real property and quiet the title thereto in the estate of the deceased. The defendant Thomas M. Shields, the grantee in one of the deeds, in his answer sought to have the title to the property covered by that deed quieted in himself. The defendant Charles B. Ewer answered to the same effect as Shields and, by cross-complaint, asked to have the description in the deed to him corrected to conform to the intention of the grantor at the time it was made. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the defendants were each entitled to the relief sought. From the judgment entered quieting the title in the defendants and correcting the description, the plaintiff appeals.

The facts are not in serious dispute and may be stated as follows: Allen E. Williams, for many years prior to his death, which occurred on February 3, 1934, lived upon a twenty-five acre farm three or four miles from the city of Kirkland, in King county. His wife had died many years before, and he had no relatives at the time of his death, except two nieces of his wife.

Seven or eight years prior to the death of Williams, Charles B. Ewer, one of the respondents, went to live with him upon the ranch and continued to live with him thereafter until February 3, 1934. During this time, Ewer did the chores upon the farm, cultivated a garden each year, did the housework, including the cooking, and took personal care of Williams. During the latter period of his life, Williams required a great deal of personal attention, and it was necessary for Ewer to bathe and wash him. Most of the expenses were paid by Williams, but some were paid by Ewer, the latter at no time receiving anything as wages. At the time of his death, Williams was eighty-eight years of age and Ewer eighty-four, though the latter appears to have been very active for a man of his age.

Williams had known the other respondent, Thomas M. Shields, since the latter was a boy, and during the years of their acquaintance Shields had rendered him assistance in looking after his property or business affairs. There was a close friendship between the two men. Prior to his death, Williams had expressed to friends and neighbors his great appreciation of what Ewer had done for him and his intention to leave him his property.

October 12, 1933, Williams caused a neighbor, who lived a mile or two distant, one J. B. McDill, to come to see him. When McDill came, Williams expressed a desire to deed his property, and, looking to this end, McDill suggested that, for the purpose of making the deeds, I. F. Davis, a justice of the peace residing in Kirkland, be called. This was done, and, after Williams had talked over with Davis the conveyances, Davis called S. F. Collins, who was a notary, to come out and prepare the deeds. Collins came, bringing his typewriter and notarial seal.

Two deeds were prepared, one conveying the north ten acres of the twenty-five acre tract to Shields, and the other, while intending to convey the south fifteen acres upon which the buildings were to Ewer, misdescribed this tract. In making out the deeds, the descriptions were read to Collins, who typed them as Davis had prepared and read them. After the deeds were prepared, signed and acknowledged, in the presence of Davis and McDill, they were handed by Williams to Ewer. McDill's testimony as to what took place at this time was as follows:

"When the deeds were finished Mr. Davis folded up Charlie's deed and handed it to Mr. Williams. He said to Mr. Williams, 'Here is your deed.' Mr. Williams handed it right over to Charlie [Ewer] and said, 'Charlie, here is the deed to this home here. It is yours. I have nothing left now. I expect you to take care of me now for the balance of my life.' Then he picked up the other deed that was laying there, which was Tom's deed, and handed that to Charlie and told him to take care of that; that he didn't want Tom to know about it until he passed away, and he didn't want Charlie's deed—he didn't want that put on record until he passed away. So that is the way it was."

Williams said something to the effect that he was then a pauper.

After the deeds were delivered, some inquiry was made as to whether Ewer had a safe place to keep them, which he said he did not. There was then some discussion, and it was finally concluded to place each deed in an envelope, put the name and address of the grantee on the outside thereof, and deliver them to the First National Bank of Kirkland for safekeeping. Looking to this end, a statement was prepared telling the bank what to do with the envelopes after Williams' death. The delivery of the deeds to the bank was not anything that emanated from Williams, but it arose

from the discussion of the others present. In carrying it out, it is true, Williams signed the direction to the bank.

After the death of Williams, the bank delivered one deed to Ewer and the other to Shields. Thereafter, the present action was brought by the administrator of the estate of the deceased, as above indicated, for the purpose of cancelling the deeds and quieting the title to the property in the estate.

■ The case presents a question of fact rather than a question of law. It is well settled that, to constitute a valid delivery of a deed, the grantor must not only intend a delivery but part with dominion and control over the deed. Whether he has parted with dominion and control, depends upon whether it was the intention to make the deed a presently operative conveyance. *Hamilton v. Kenton*, 182 Wash. 81, 45 P. (2d) 36. The intention may be made manifest by acts or words of both or by one without the other, but what is said or done must clearly manifest the intention of the grantor that the deed shall at once become operative and that the grantor shall lose control over it. *Showalter v. Spangle*, 93 Wash. 326, 160 Pac. 1042.

The question here is whether, after the deeds were prepared, executed, and acknowledged, the handing of them to Ewer was a delivery then operative, with the intention to then pass title. There can be no question as to the Ewer deed relative to the intention of the grantor. The language he used at the time of handing the deed to Ewer indicates clearly an intention to make the conveyance then operative. This was in accord with his previously expressed intention to friends and neighbors, and was in accord with statements made by him subsequently.

■ With reference to the Shields' deed, the evi-

dence is not so clear, but we are satisfied, after an examination of the record, that it was the intention of the grantor that each of the deeds should have the same effect. There was a reason why Williams desired to give his property to the two men mentioned, as has already been stated. He did not desire to give anything to the nieces for reasons expressed by him, which are not here material.

In the briefs, there is discussion with reference to the effect of the delivery of the deeds to the bank and the signing of the instructions to the bank by Williams. But this we regard as immaterial, because, under the evidence, the deeds, prior to the time this letter of instruction was prepared, had been delivered and had passed beyond the dominion and control of the grantor.

The delivery of the Shields' deed to Ewer was a good delivery, because the grantor may deliver a deed to a third person for the benefit of the grantee ultimately, and the delivery is good where the grantor parts with all dominion and control over the deed. *Rhines v. Young,* 97 Wash. 437, 166 Pac. 642; *Drinkwater v. Hoffeditz,* 157 Wash. 305, 288 Pac. 919.

The appellant cites cases where this court has held that the delivery of a deed did not meet the requirements of the law. On the other hand, the respondents have cited cases where the delivery did meet such requirements. To review these cases, respectively cited, would serve no useful purpose, because each case must turn largely upon its own facts.

The trial court correctly held that the delivery of the deeds became operative when they were handed to Ewer by Williams immediately after their preparation, execution and acknowledgment.

The description in the Ewer deed was obviously a

290

mistake, and we do not understand it to be now contended that the court erred in correcting the description.

The judgment will be affirmed.

MITCHELL, HOLCOMB, BEALS, and BLAKE, JJ., concur.