[No. 30250.   Department One.   October 2, 1947.]

MYRTLE PUCKETT, *Individually and as Executrix, Appellant,*
v. NELSON C. PUCKETT *et al., Respondents.*[1]

*Savage & Gaines,* for appellant.

*Little, Leader, LeSourd & Palmer,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a decree quieting title to certain real estate, located in Island county, Washington, in respondents, Merrill Puckett and Minnie H. Puckett, his wife.

Dr. Harry C. Puckett, who had been a dentist with offices in the Medical-Dental Building, Seattle, died March 10, 1945, leaving appellant as his survivor. A couple of days after his death, his brother, Nelson C. Puckett, and Nelson's son, Merrill, found, among papers in the doctor's office, a warranty deed conveying the property involved in this action. The deed was dated February 27, 1933, and

[1] Reported in 185 P. (2d) 131.

was executed by Harry C. Puckett and Myrtle L. Puckett, with Nelson C. Puckett named as grantee. Nelson sent the deed to Island county, where it was filed for record March 28, 1945. On March 24, 1945, Nelson Puckett deeded the property to his son, Merrill K. Puckett, or Minnie H. Puckett, Merrill's wife. This deed was also recorded in Island county, March 28, 1945. Myrtle Puckett then commenced this action to have the title to the property quieted in her, with the result heretofore announced.

The property in question was acquired by Dr. Puckett and his wife in 1928. The explanation given by the widow concerning the execution of the deed to Nelson is that, in 1933, because of the depression and drought, they had suffered rather heavy losses and were afraid that they would not have anything for their old age. They conceived the idea of deeding their property to relatives, in order to give them a little more time to take care of their creditors. There was also some testimony that this was done because the doctor was fearful of a malpractice suit. At any rate, this property was deeded to Nelson Puckett; the home place in Seattle was deeded to Mrs. Puckett's brother-in-law in Iowa; and the rest of the property, located in other states, was deeded to the doctor's nephew in Illinois. Only the deed to the home place was recorded. Almost immediately Mrs. Puckett's brother-in-law and his wife deeded it back to Mrs. Puckett. The widow's testimony was that none of the deeds were ever delivered, and that they remained in a dresser drawer in the house until about two months before the doctor's death, when he took them away.

Nelson Puckett testified that he was given this deed about six or seven years prior to the trial, which took place December 17, 1946; that he went into his brother's office in the Medical-Dental Building; that his brother was working on a child and that two ladies were in the waiting room; that after the child and the ladies left, his brother came out of the office and handed him this deed, telling him that he wanted him to have it because he was more entitled to it than anyone else; that he then took the deed to the Guardian Safe Deposit Vault, Inc., located at 606 Pine street,

where he and his brother had a joint box, and deposited it. This place was about two blocks from the doctor's office. He testified that he never saw the deed again until he found it in the doctor's office, subsequent to his death; that he never mentioned delivery of the deed to the doctor's wife, or to his son, or to anyone else.

On June 28, 1946, prior to the trial, the deposition of Nelson Puckett was taken. On that occasion, he testified that the delivery of the deed from his brother was about a year and a half or two years prior thereto. However, a day or so before the trial, he and his son went to the Guardian Safe Deposit Vault and examined the records there. Mrs. Ward, one of the owners of the Guardian company, testified that from 1936 to 1939 they operated in the Hoge Building, which is about twenty blocks from their present location, to which they moved on Labor Day, 1939. Their records showed that box No. 961 was available to H. C. Puckett, N. C. Puckett, and Myrtle Puckett up to September 25, 1939, when it was surrendered by H. C. and Myrtle Puckett and then taken over by Nelson C. Puckett alone. Nelson testified that when his brother gave him the deed, he took it to 606 Pine street, describing the route which he took from the Medical-Dental Building.

So, it will be seen that, the safety deposit box having been moved from the Hoge Building to 606 Pine street on Labor Day, 1939, the deed must have been deposited by Nelson sometime between Labor Day and September 25, 1939, and must have been removed by the doctor subsequent to its deposit by Nelson and prior to September 25, 1939. The trial judge found that, after its execution, the deed was delivered by H. C. Puckett to Nelson C. Puckett, who placed it in a safety deposit box at 606 Pine street, and,

" . . . that some time prior to the 25th day of September, 1939, the said Harry C. Puckett, without any knowledge or consent or authority of the defendant, Nelson C. Puckett, either inadvertently or wrongfully removed said deed from said safety deposit box with the Guardian State Deposit Vaults, Inc."

■ Was there a delivery of the deed by Harry C. Puckett to his brother, Nelson? To determine that question, we have laid down certain rules to guide us.

In *Atwood v. Atwood*, 15 Wash. 285, 46 Pac. 240, we said:

"In coming to these conclusions we have not lost sight of the able argument and large array of authorities contained in the brief of appellant, to the effect that the delivery of a deed does not necessarily require any formal act on the part of the grantor; that it is often a question of intention; that a deed may become operative while the manual possession is retained by the grantor. But in such cases, before the court can find a delivery, the intention to consummate the transaction so as to fully vest the title in the grantee must be clearly shown, and neither the findings of fact by the referee nor by the superior court, nor the evidence in the case, satisfies us that the grantor in the deed under consideration ever did anything with the intention that by doing it he had so delivered the deed as to make it presently operative."

In *Showalter v. Spangle*, 93 Wash. 326, 160 Pac. 1042, we said:

"To constitute a delivery,
" 'It must clearly appear that it was the intention of the grantor that the deed should pass the title at the time, and that he should lose all control over it. A deed for an interest in land must take effect upon its execution and delivery, or not at all.' *Wilson v. Wilson*, 158 Ill. 567, 41 N. E. 1007, 49 Am. St. 176.
" 'Nor is any particular form or ceremony necessary to constitute a sufficient delivery. It may be by acts or words, or both, or by one without the other; but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative, to pass the title to the land conveyed, and that the grantor loses all control over it.' *Byars v. Spencer*, 101 Ill. 429, 40 Am. Rep. 212."

Again, in *Mathewson v. Shields*, 184 Wash. 284, 50 P. (2d) 898:

"It is well settled that, to constitute a valid delivery of a deed, the grantor must not only intend a delivery but part with dominion and control over the deed. Whether he has parted with dominion and control, depends upon whether it was the intention to make the deed a presently operative

conveyance. *Hamilton v. Kenton,* 182 Wash. 81, 45 P. (2d) 36. The intention may be made manifest by acts or words of both or by one without the other, but what is said or done must clearly manifest the intention of the grantor that the deed shall at once become operative and that the grantor shall lose control over it. *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042."

■■ In the case at bar, we are satisfied there had been no manual delivery of the deed, and that Nelson Puckett never saw it until he discovered it in the office after his brother's death. True, we have always held that the findings of the trial judge are entitled to great weight, he having the advantage over us of having seen the witnesses face to face, and being in a better position to judge as to the credibility of their testimony. Nevertheless, upon an appeal, the ultimate determination of the facts rests with this court.

The story of Nelson Puckett that, sometime between Labor Day and September 25, 1939, his brother handed him this deed, he deposited it at 606 Pine, and later, but prior to September 25th, his brother repossessed it, seems to us to be highly improbable. In fact, it is utterly fantastic.

Let us examine the record further and see whether we can find, from the conduct of both brothers, any facts to indicate such a delivery. Nelson never mentioned the deed to his son, to the doctor's wife, or to anyone else. He never put it on record (until after discovering it in his brother's office). He never paid the taxes on it. He never took any produce off of it. On the other hand, the doctor continued to pay the taxes. He planted fruit trees on it and took the produce therefrom. He bought material for the place. He treated it as his property and intended to go there when he retired. He was working there the day he fell and was injured, which injuries resulted in his death. On April 27, 1935, two years after the date of the deed to his brother, he filed a declaration of homestead on the place. We find nothing in the conduct of Nelson Puckett which would indicate a taking of dominion and control over the property, and we find nothing in the conduct of the doctor which

would indicate any parting with such dominion and control.

The judgment is reversed and remanded, with instructions to grant the prayer of appellant's complaint.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.