FILED
COURT OF APPEALS DIV. I
STATE OF WASHINGTON

2013 OCT 28 AM 9: 38



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | NO. 67255-0-I |
| | ) | |
| RANDALL J. LANGELAND. | ) | (Consolidated with |
| | ) | No. 67659-8-I) |
| SHARON DROWN, | ) | |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| JANELL BOONE, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 28, 2013 |
| | ) | |

LEACH, C.J. — This case involves competing claims to the estate of Randall J. Langeland asserted by his daughter, Janell Boone, and the woman with whom he lived from 1991 until his death in 2009, Sharon Drown. Drown appeals several pretrial orders, a posttrial order memorializing an evidentiary ruling made during trial, and the findings of fact and conclusions of law entered after trial on her petition for accounting, determination of ownership, fair and equitable division of assets, and other relief. She alleges that the court erroneously classified assets acquired during her committed intimate relationship with Langeland as his separate property and inequitably divided those assets.

She also challenges the court's determination that the dead man's statute[1] prevented her from testifying to conversations with Langeland about the character of certain property and its decision that the statute governing intestate succession did not apply by analogy. Finally, Drown asserts that the trial court should not have awarded attorney fees to Boone because this case involves novel issues of law.

In a cross appeal, Boone contests the trial court's rejection of her challenge to Langeland's designation of Drown as the beneficiary of his Fidelity IRA (individual retirement account) and its denial of her request for attorney fees on this claim.

We affirm the trial court's decisions about the laws for intestate succession and the IRA beneficiary designations but do not reach the dead man's statute challenge. From our examination of the history and nature of the conflicting presumptions invoked by the parties before the trial court, viewed in the context of this case, we conclude that the presumption that property acquired during a committed intimate relationship is jointly owned should prevail over a presumption of correctness for an estate inventory. Therefore, we reverse the trial court's division of probate assets and remand to the trial court for further proceedings consistent with this opinion. To allow the trial court full discretion to

---

[1] RCW 5.60.030.

make an equitable award following a correct characterization, we also vacate the fee award to Boone.

## FACTS

Randall Langeland and Sharon Drown met and began dating in 1983. In 1991, they began living together. Boone has stipulated that they lived in a committed intimate relationship. Beginning in 1999 and throughout the rest of his life, Langeland suffered from numerous undiagnosable and untreatable ailments. In 2009, he died from complications relating to an autoimmune disorder of unknown etiology. Langeland did not have a will.

Throughout Langeland's many illnesses, Drown served as his primary caregiver. She traveled with him and assisted him with his business affairs; she cared for his personal hygiene needs and administered his medications; she attended all his medical appointments and was very involved with his treatment.

The probate assets itemized in the personal representative's inventory as Langeland's property, and now disputed on appeal, include the proceeds from a software company Langeland founded in 1994, a house that he purchased with Drown in 1999, and a 36-foot sailboat purchased in 1998. The court, relying on the presumption of correctness for this inventory, required Drown to prove her ownership interest. It rejected Drown's claim that the court should presume joint

ownership of assets acquired while she and Langeland cohabited and applied the dead man's statute to limit Drown's testimony.

When Drown failed to meet the burden of proving that she owned any interest in the contested assets, the court awarded nearly all of the assets to Langeland's only heir, Boone. It found that Drown proved her rights to the Fidelity IRA, on which she was named as beneficiary, and 24.7 percent ownership of the couple's Bellingham home, based upon a promissory note executed by Drown and Langeland. Characterizing Drown's claims as baseless, the court awarded attorney fees to the estate for defending against Drown's claims. It denied Boone's request for fees relating to the IRA award. Drown appeals the award of property and fees to Boone; Boone cross appeals the award of the IRA to Drown and the court's denial of fees related to that claim.

## STANDARD OF REVIEW

Resolution of conflicting presumptions presents a question of law, which we review de novo. When reviewing challenged findings of fact and conclusions of law, we determine if substantial evidence supports the findings and if the findings of fact, in turn, support the conclusions of law.[2] Substantial evidence is

---

[2] Douglas v. Visser, 173 Wn. App. 823, 829, 295 P.3d 800 (2013).

evidence sufficient to persuade a fair-minded, rational person that the finding is

true.[3] Unchallenged findings of fact become verities on appeal.[4]

## ANALYSIS

We first address resolution of the conflicting presumptions invoked by the

parties before the trial court. Drown contends that all property acquired while she

and Langeland lived together is presumed to be owned by both of them because

Boone stipulated that Drown and Langeland lived in a committed intimate

relationship. She further contends that Boone has the burden of proving

otherwise by clear and convincing evidence. Boone contends that the personal

representative's inventory is presumed to be correct and that Drown has the

burden of proving the contrary. Pretrial, the trial court adopted Boone's position.

We disagree.

When parties invoke conflicting presumptions, two viewpoints exist about

how to resolve the conflict.[5] Under the first approach conflicting presumptions

cancel each other, while the second requires that the court determine which

---

[3] Recreational Equip., Inc. v. World Wrapps Nw., Inc., 165 Wn. App. 553, 558, 266 P.3d 924 (2011).

[4] In re Estate of Freeberg, 130 Wn. App. 202, 205, 122 P.3d 741 (2005). Drown makes 39 assignments of error, challenging the court's refusal to apply a community property-like presumption; its characterization of the house, the boat, and the business as Langeland's separate property; and the conclusions of law awarding a substantial majority of the property to Boone.

[5] 1 CLIFFORD S. FISHMAN, JONES ON EVIDENCE CIVIL AND CRIMINAL § 4:59 (7th ed. 1992).

presumption should prevail, based upon a variety of factors, which may include public policy, logic, and an assessment of probabilities.[6] Logically, jurisdictions that adhere to the Thayer "bursting bubble" theory of presumptions[7] should follow the first approach, while jurisdictions giving different weight to different presumptions[8] should follow the second one.[9]

Washington cases provide little guidance about how to resolve conflicting presumptions. This lack of clarity exists, at least in part, because Washington cases apply the Thayer theory to some, but not all, presumptions and provide no general rule about when it applies.[10] Other cases identify presumptions that shift the burden of proof.[11] To further complicate the problem, the quantum of evidence required to overcome a burden-shifting presumption varies, and Washington cases do not provide any general guidelines or standards.[12] As a result, "the subject of presumptions is one of impossible difficulty for lawyers, and trial judges as well."[13]

---

[6] 1 FISHMAN, § 4:59.

[7] Under the Thayer theory, a presumption places the burden of production of evidence upon the party against whom it operates but disappears if that party produces contrary evidence. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 301.14, at 238 (5th ed. 2007).

[8] Often called the Morgan theory, under this approach a presumption shifts the burden of proof as to the presumed fact. 5 TEGLAND, § 301.15, at 241.

[9] 1 FISHMAN, § 4:59.

[10] 5 TEGLAND, §§ 301.15-301.16.

[11] See 5 TEGLAND, §301.14, for a collection of these cases.

[12] 5 TEGLAND, § 301.15, at 244.

[13] 5 TEGLAND, § 301.14, at 238.

A leading commentator on Washington evidence law suggests that <u>Parker</u> <u>v. Parker</u>,[14] provides "some indication that if a choice is necessary[,] the 'stronger' presumption should be applied"[15] and that conflicting presumptions of equal weight cancel each other.[16] We do not find this indication in the <u>Parker</u> opinion.

In <u>Parker</u>, the assignee of two promissory notes sued the deceased maker's estate for payment.[17] The executrix presented evidence of the decedent's delivery of cash and bonds in the same amount as the notes to the original note holder. She relied upon the presumption that money transferred from one person to another is presumed to be in payment of the obligation between them.[18] The noteholder and assignee presented evidence that these payments were gifts and sought to offset this presumption with another—that since the notes remained in their possession, they were presumed to be unpaid.[19] The court did not resolve the conflict between these two presumptions.

Instead, it decided the case using a third presumption not asserted by any party. The court noted that the decedent had been married a number of years

---

[14] 121 Wash. 24, 207 P. 1062 (1922).

[15] 5 TEGLAND, § 301.17, at 249.

[16] 5 TEGLAND, § 301.17, at 250 (citing <u>Prall v. Great N. Ry.</u>, 105 Wash. 24, 177 P. 637 (1919)).

[17] <u>Parker</u>, 121 Wash. at 25.

[18] <u>Parker</u>, 121 Wash. at 26.

[19] <u>Parker</u>, 121 Wash. at 26-27.

and had acquired the cash and bonds after his marriage, raising the presumption that they were community property.[20] After observing that "[t]his presumption is not overcome in any way by any proof on behalf of the appellant," the court noted that the decedent lacked the required consent of his wife to make a gift of community property and held that any alleged gift of the cash and bonds was void.[21] The court's opinion does not purport to provide any rule for resolving conflicting presumptions or identify any of the three described presumptions as being stronger than the others.

A number of states require that the trial court assess the comparative weight of conflicting presumptions and apply the stronger one.[22] Some states have adopted this approach through judicial decision,[23] and many others have done so through evidence rule.[24] A number of the evidence rules adopt the approach of Rule 301(b) of the Uniform Rules of Evidence:

> **(b) Inconsistent Presumptions.** If presumptions are inconsistent, the presumption applies that is founded upon weightier considerations of policy. If considerations of policy are of equal weight neither presumption applies.

---

[20] Parker, 121 Wash. at 27.

[21] Parker, 121 Wash. at 27-28.

[22] 1 FISHMAN, § 4:61.

[23] See, e.g., Schmeizl v. Schmeizl, 184 Md. 584, 594-95, 42 A.2d 106 (1945); Palmer v. Palmer, 162 N.Y. 130, 56 N.E. 501 (1900); Young v. State, 111 Tex. Crim. 17, 10 S.W.2d 1008 (1928).

[24] See, e.g., ARK. R. EVID. 301(b); DEL. UNIF. R. EVID. 301(b); MONT. R. EVID. 301(c); OR. R. EVID. 310 (O.R.S. § 40.130).

The Federal Rule of Evidence 301 addresses presumptions but does not include

any provision for resolving inconsistent presumptions:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

Washington has not adopted an evidence rule addressing presumptions.

Washington cases have adopted individual presumptions for different

reasons with policies of varying strength behind them. Some shift the burden of

production, while others shift the burden of persuasion. Some are intertwined

with pertinent substantive law. As a result, we are skeptical of the wisdom of

attempting to provide a single rule to resolve all presumption conflicts. Instead,

from an examination of the history and nature of the two presumptions before us,

viewed in the context of this case, we conclude that the presumption that

property acquired during a committed intimate relationship is jointly owned

should prevail over a presumption of correctness for an estate inventory.

In 1984, the Washington Supreme Court adopted a general rule requiring

a just and equitable division of property after the end of what we now call a

committed intimate relationship.[25] In 1995, the court held that "income and

property acquired during a meretricious relationship should be characterized in a

---

[25] In re Marriage of Lindsey, 101 Wn.2d 299, 304, 678 P.2d 328 (1984).

similar manner as income and property acquired during marriage. Therefore, all property acquired during a meretricious relationship is presumed to be owned by both parties."[26] A party may overcome this rebuttable presumption "by establishing by 'clear and convincing proof' that the property is separate, i.e., by tracing with some degree of particularity the separate source of funds used for the acquisition."[27]

> In the same case where it recognized this presumption, the court also
>
> established a three-prong analysis for disposing of property when a meretricious relationship terminates. First, the trial court must determine whether a meretricious relationship exists. Second, if such a relationship exists, the trial court evaluates the interest each party has in the property acquired during the relationship. Third, the trial court then makes a just and equitable distribution of such property.[28]

This analysis applies when the relationship ends through the death of one partner and the deceased partner's heirs have no greater rights than the decedent would have, if living.[29]

Thus, a party to a committed intimate relationship enjoys the benefit of a burden of persuasion-shifting presumption that all income and property acquired during the relationship are jointly owned and does not lose the benefit of that

---

[26] Connell v. Francisco, 127 Wn.2d 339, 351, 898 P.2d 831 (1995).

[27] Chesterfield v. Nash, 96 Wn. App. 103, 111, 978 P.2d 551 (1999) (citing Connell, 127 Wn.2d at 350-51), rev'd on other grounds, In re Marriage of Pennington, 142 Wn.2d 592, 14 P.3d 764 (2000).

[28] Pennington, 142 Wn.2d at 602 (citing Connell, 127 Wn.2d at 349).

[29] Olver v. Fowler, 161 Wn.2d 655, 670-71, 168 P.3d 348 (2007).

presumption through the death of the other partner.  This presumption replaced

an earlier presumption that the court abandoned because its constricting dictates

"made the law unpredictable and at times onerous."[30]

The presumption of an estate inventory's correctness appears to have

been recognized in Washington for the first and only time in In re Estate of

Shaner: "The burden of proof rested with respondent not only because she was

the plaintiff in the separate action which was brought, but also because she

challenges, in the estate proceeding, the inventory, which is presumed to be

correct."[31]  The Shaner opinion provides no discussion of this presumption and

does not apply it in its analysis.  Instead, it analyzes the application of an entirely

different presumption, that of continued ownership.[32]  Nothing in Shaner

suggests that the presumption of correctness shifts the burden of proof or

survives after the production of contrary evidence.  Shaner cites In re Estate of

Hamilton[33] as its sole authority for this presumption.[34]

Hamilton contains no reference to such a presumption.  Instead, in an

action where a surviving husband petitioned for an order striking four parcels

from the inventory he filed in his wife's estate on the basis that they were his

---

[30] Lindsey, 101 Wn.2d at 304.
[31] 41 Wn.2d 236, 242, 248 P.2d 560 (1952).
[32] Shaner, 41 Wn.2d at 242-45.
[33] 182 Wash. 81, 89, 45 P.2d 36 (1935).
[34] Shaner, 41 Wn.2d at 242.

separate property erroneously inventoried, the court stated, "The burden rests upon appellant to prove by a preponderance of the testimony the allegations of his petition, which allegations are inconsistent with practically all of his prior actions and statements."[35] This unremarkable observation appears to reflect nothing more than a statement of the general proposition that a party seeking judicial relief must establish those facts entitling that party to relief.

In contrast to the joint property presumption, the inventory presumption does not shift the burden of persuasion and does not appear to reflect any significant particularized policy decision. Generally, a presumption shifting the burden of persuasion should outweigh one that only shifts the burden of production because the same factors that justify giving one presumption greater impact also justify giving it greater weight than a presumption having less procedural impact.[36] Here, giving precedence to the inventory presumption does not further any policy decision articulated by our Supreme Court, while giving precedence to the joint property presumption furthers those policies articulated by the court in In re Marriage of Lindsey,[37] Connell v. Francisco,[38] and Olver v. Fowler.[39] Finally, in the context of this case, giving precedence to the inventory

---

[35] Hamilton, 182 Wash. at 89.
[36] 1 FISHMAN, § 4:62.
[37] 101 Wn.2d 299, 678 P.2d 328 (1984).
[38] 127 Wn.2d 339, 898 P.2d 831 (1995).
[39] 161 Wn.2d 655, 168 P.3d 348 (2007).

presumption would frustrate the Olver court's statement that a deceased partner's heirs should have no greater rights than the decedent would have, if alive. The inventory presumption relieved Boone from an onerous burden of persuasion that applied to Langeland and that she could not meet.

We hold that the presumption that property acquired during an intimate committed relationship is jointly owned prevails over the presumption of correctness for an estate inventory.

We next consider whether the trial court's failure to apply this presumption prejudiced Drown. Drown and Boone primarily contest ownership of three probate assets, the proceeds from a software company Langeland founded, a house that he purchased with Drown, and a 36-foot sailboat. All were acquired during the Langeland/Drown committed relationship and subject to the joint property presumption. The court received no evidence tracing any of these three assets to funds owned by Langeland before his relationship with Drown began or acquired by Langeland by gift or inheritance afterward. As a matter of law, Boone failed to overcome the joint property presumption with respect to all three contested probate assets.

Boone contends that Drown's own testimony establishes the separate character of the sailboat. Drown testified,

> Q. I believe you testified that Mr. Langeland purchased the Catalina 36 sailboat with his own funds, correct?

-13-

A.    Correct.

But Boone's argument ignores the following clarifying testimony from Drown:

Q.    Do you know where the funds came to purchase this boat, came from?
A.    Um, he saved all of his money for this boat.
Q.    And was that savings that occurred during the time that you were in a committed intimate relationship starting in 1991?
A.    Yes.

Boone also contends that Drown failed to establish the existence of a committed intimate relationship. This contention ignores Boone's stipulation filed pretrial with the trial court:

You and each of you will please take note that for the purposes of the proceedings herein, Janell Boone hereby stipulates that decedent and Sharon Drown were in an intimate committed relationship.

Boone provides no explanation why this stipulation does not control this issue.

Even if the trial court mischaracterizes property as community or separate, this court may uphold a division of property, so long as it is fair and equitable.[40] Remand is required only where (1) the trial court's reasoning indicates that its characterization of the property significantly influenced distribution of property and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.[41] Here, the findings of fact and conclusions of law show that the trial court's belief that Drown had no equitable

---

[40] In re Marriage of Kraft, 119 Wn.2d 438, 449, 832 P.2d 871 (1992).
[41] In re Marriage of Shannon, 55 Wn. App. 137, 142, 777 P.2d 8 (1989).

interest in the contested probate assets clearly influenced its decision to award those assets to Boone. Therefore, we reverse the trial court's division of probate assets and remand for further proceeding consistent with this opinion. To provide the trial court with full discretion to make an equitable division, we also vacate its award of attorney fees to Boone.

Contrary to the assumption contained in Drown's briefing filed with this court, a determination that the contested probate assets were jointly owned does not require that the trial court divide them equally between Drown and Boone. The three-part analysis adopted in Connell requires that the trial court determine what property is subject to division and make a fair and equitable division based upon the factors identified in the court's opinion.[42]

Because of our resolution of the characterization of the contested probate assets, we need not address Drown's assignments of error to the trial court's evidentiary rulings or its application of the dead man's statute.

We next address Drown's claim that the trial court should have "applied, by analogy, Washington intestate statutes," as regards community property to award her, in equity, Langeland's interest in various assets. We must reject this claim because we are bound by the Supreme Court's decision, holding:

> [U]nder Washington law, a surviving partner in a "meretricious" relationship does not have the status of a widow with respect to

---

[42]Connell, 127 Wn.2d at 349.

-15-

intestate devolution of the deceased partner's personal property. The division of property following termination of an unmarried cohabiting relationship is based on equity, contract or trust, and not on inheritance.[43]

On cross appeal, Boone alleges that the trial court erred by finding that Drown was entitled to the funds in Langeland's Fidelity IRA. Several months before his death, Langeland transferred funds from an employer pension plan into a Fidelity IRA account and named Drown the account beneficiary. Boone characterizes this transaction as an inter vivos gift and argues that the gift was invalid because Drown did not prove by clear and convincing evidence that Langeland made the gift without any undue influence.

Boone's argument depends upon her characterization of the beneficiary designation as an inter vivos gift:

> In order to constitute a gift of personal property, one of the things necessary is that there must be a delivery, and that delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably, and confer upon the donee the dominion and control.[44]

Designating a life insurance beneficiary is not an inter vivos gift because the designation is "merely a means of transmitting property at death"[45] and the beneficiary has no rights before the insured's death. Similarly, naming the beneficiary of an IRA is not an inter vivos gift. As a result, the cases involving

---

[43]Peffley-Warner v. Bowen, 113 Wn. 2d 243, 253, 778 P.2d 1022 (1989).
[44] Decker v. Fowler, 199 Wash. 549, 551, 92 P.2d 254 (1939).
[45] Francis v. Francis, 89 Wn.2d 511, 514, 573 P.2d 369 (1978).

inter vivos gift relied upon by Boone have no application. Drown did not have the burden of proving by clear, cogent, and convincing evidence the validity of the beneficiary designation and the absence of undue influence. The court heard testimony from Drown about her role in assisting Langeland to create the rollover IRA; it heard testimony from Boone's expert witness opining that Langeland's signature on the transfer documents was a forgery; and it heard Drown's denial of any wrongdoing. The court ultimately found the IRA beneficiary designation valid. Substantial evidence supports the court's findings on this issue.

Boone, on cross appeal, argues that the court should increase her fee award to include fees relating to the IRA claim. As discussed above, the court did not err in awarding the IRA to Drown; therefore, we deny Boone's request for additional fees.

## CONCLUSION

Because the court failed to apply the correct presumption to property acquired during the Langeland/Drown committed intimate relationship, we

reverse and remand to the trial court to reconsider the proper distribution of the

jointly acquired assets and the issue of attorney fees. Otherwise, we affirm.

Leach, C.J.

WE CONCUR:

Dwyer, J.                          Appelwick, J.