IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Estate of BERTHOLD R. FORDERER | ) ) ) | No. 79171-1-I |
| and | ) ) | UNPUBLISHED OPINION |
| EMILIE L. FORDERER, | ) ) | |
| Deceased. | ) | |

BOWMAN, J. — Susanne Forderer brought a motion to remove Alexander (Alex) Forderer as personal representative (PR) of the estate of Berthold and Emilie Forderer under RCW 11.28.250. Following a lengthy trial, the court granted the motion based on multiple grounds, including waste and mismanagement of the estate. Because the unchallenged findings of fact support Alex's[1] removal as PR, we affirm.

FACTS

Berthold and Emilie married and had two children, Susanne and Berthold (Bert) Forderer. Alex is Emilie's son from a former marriage and half-brother to Susanne and Bert.

---

[1] We refer to the members of the Forderer family by their first names throughout the opinion for purposes of clarity and mean no disrespect by doing so.

Citations and pin cites are based on the Westlaw online version of the cited material.

Berthold died in February 2009, leaving all assets to Emilie. An accounting at the time of Berthold's death showed $1,432,073.43 in assets, including a Charles Schwab account worth $318,436.30, a Boeing 401K account worth $906,565.45, and multiple KeyBank accounts worth more than $198,000.00.

Shortly before Berthold's death, Emilie designated Alex as her attorney-in-fact. Emilie executed a durable power of attorney (POA) granting Alex all decision-making powers over her estate except for the ability to make gifts of her property. The POA remained in effect until Emilie's death in 2015.

In 2009, Alex obtained a geriatric assessment of Emilie. The assessment concluded Emilie could " 'perform most of her activities of daily living, except for managing money or preparing meals.' "

In January 2010, Susanne filed a "Petition for Vulnerable Adult Order for Protection." In the petition, Susanne expressed concern about Emilie's capacity to care for herself and Alex's undue influence. Susanne argued Emilie had Alzheimer's disease/dementia that prevented her "from withstanding the efforts" of Alex to isolate Emilie from other family members. At a hearing on the petition, Emilie testified that she still had her "marbles" and was able to take care of herself. The court found that Emilie could clearly voice her opinions and dismissed the petition without prejudice.

Emilie moved into an assisted living facility in December 2009. Alex visited her almost daily. Emilie deferred the management of her financial affairs

to Alex. He had a debit card for her bank accounts and kept her purse with her debit card in his home safe.

Emilie died in March 2015. Her death certificate listed the cause of death as Alzheimer's disease and indicated six years between onset of the disease and death. Emilie left her estate to Alex, Susanne, and Bert. She designated Alex as the PR.

In October 2015, Alex filed an estate inventory listing the probate and nonprobate assets. There were significant discrepancies between Alex's estate inventory list and the assets listed in the accounting of the estate after Berthold's death. For example, the Boeing 401K account held approximately $330,000 less than at the time of Berthold's death and none of the KeyBank accounts appeared on the asset inventory. The inventory also stated that Emilie possessed no personal property at the time of her death.

In April 2017, Susanne filed a motion under RCW 11.28.250 to remove Alex as PR. She alleged that Alex had a conflict of interest based on his suspicious management of funds during Emilie's lifetime. Alex opposed the motion, claiming he spent the missing funds on Emilie's care and support during her final six years of life. Alex argued there was no evidence that he failed to perform his duties or had a conflict of interest. The trial court denied the motion to remove Alex as PR without prejudice but ordered him to provide a verified accounting of the estate with supporting documentation to address the issues raised in the motion for removal. Alex filed a new accounting in August 2017.

In December 2017, Susanne renewed her motion for removal of Alex, alleging waste and mismanagement of the estate's assets during Emilie's lifetime. A commissioner denied the motion to remove Alex as PR but certified the issue of the adequacy of the accounting for trial. In March 2018, Alex made an offer of judgment under CR 68 to pay a judgment of $58,000 and step down as PR subject to several conditions. Those conditions included indemnity and release of Alex from further liability related to the probate of the estate and payment of his attorney fees by the estate. Susanne declined the offer.

At a pretrial hearing, Alex sought an order to limit the trial to matters relating to the PR's accounting and to bar discovery of Emilie's medical information. The trial court granted the motion "to limit testimony and evidence presented at trial to accounting only." The court also ordered that "the parties shall not request discovery, offer evidence[,] or [e]licit testimony from witnesses with regard to Emilie Forderer's Personal Health Information at any time during her life." The court denied Susanne's motion for reconsideration. Susanne filed a motion for discretionary review. A commissioner of this court denied Susanne's motion.

During trial, Susanne's forensic accountant expert Lorraine Barrick provided evidence that more than $250,000 in disbursements from Emilie's accounts were not for her benefit. The disbursements included men's clothing, tools, vehicles, household goods, and fresh groceries purchased during the time Emilie lived in an assisted facility that provided three meals each day. Emilie's account also showed over $78,000 in payments to Alex's son and over $28,000

4

in unaccounted for cash and cashier's checks. Barrick testified that at least $133,175 from Emilie's KeyBank accounts should have been included in the estate. Instead, Alex assumed ownership of the funds as joint account holder with right of survivorship. Based on Barrick's calculations, a minimum of $408,840 was missing from the estate.

The trial court concluded Alex had wasted assets and mismanaged the estate. The court removed Alex and appointed a new PR. The trial court granted Susanne's motion for attorney fees and costs under RCW 11.96A.150. The court denied Alex's request for attorney fees and costs under CR 68. Alex appeals.

ANALYSIS

Removal of the PR

Alex claims the court erred in removing him as PR of Emilie's estate. We conclude that the unchallenged findings of fact support the trial court's decision to remove Alex for waste of assets and mismanagement of Emilie's estate.

RCW 11.28.250 authorizes the court to remove a PR

[w]henever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary.

The court has wide discretion to remove a PR and an appellate court should generally not interfere. In re Estate of Beard, 60 Wn.2d 127, 132, 372 P.2d 530 (1962). The superior court must have valid grounds for removal

5

supported by the record. In re Estate of Jones, 152 Wn.2d 1, 10, 93 P.3d 147 (2004). "[I]f even one ground for removal is valid, the decision should be upheld on appeal." Jones, 152 Wn.2d at 10. However, if the findings do not support removal, the removal is arbitrary and improper. Jones, 152 Wn.2d at 8.

Unchallenged findings of fact are verities on appeal. Jones, 152 Wn.2d at 8. Challenged findings of fact must be supported by substantial evidence sufficient to persuade a rational, fair-minded person of the truth of the finding. Jones, 152 Wn.2d at 8. An appellate court reviews conclusions of law de novo. Jones, 152 Wn.2d at 8-9.

Here, the trial court concluded the evidence clearly and convincingly demonstrated Alex had wasted and mismanaged the estate. The court removed Alex as PR based on several "non-exclusive" grounds:

> (1) Alex breached his fiduciary duty to Emile with regard to the expenditures of at least $357,429[.00] of Emilie's funds during her life that were either unaccounted for, not for, or only partially for Emilie's benefit; (2) Alex procured "gifts" of at least $628,519.57 from Emilie related to the opening of the Key Bank and [Charles] Schwab accounts and the funds he received from those accounts upon her death, all of which were the product of undue influence and/or fraud; (3) Alex mismanaged at least $100,000[.00] in Estate assets by failing to report any of Emilie's personal property on the Estate Inventory, including the tractor, trailer, dump truck, jewelry, tools, or any replacement items Alex may have purchased with the insurance proceeds; (4) Alex mismanaged at least $133,175.14 in Estate funds by taking the Key Bank accounts for himself upon Emilie's death, funds that should have gone to the Estate under RCW 30A.22.100; (5) Alex acted improperly in connection with his actions regarding the insurance claims he filed on Emilie's behalf and the $26,331.08 in proceeds he received but did not report on the Estate Inventory or in the 2017 Accounting; and (6) Alex committed waste with respect to his neglect of the Family Property, an asset of the Estate.

The unchallenged findings of fact support at least one of the statutory grounds for removal of Alex as the PR. For example, Alex does not challenge the trial court's findings that he failed to maintain the family property. This includes findings that he claimed $131,294.82 in expenses related to the upkeep of the home, but the home is uninhabitable due to serious neglect. The court found, "The current uninhabitable condition of the house does not support Alex's contention that any of Emilie's funds were actually spent on the Family Property's maintenance during the relevant time period."

Likewise, the trial court found that Alex did not report Emilie's personal property as assets on the estate inventory, including a $58,000 Kubota tractor that he purchased with her funds and kept at his property. Alex did not assign error to this finding of fact. Alex also purchased a $6,200 dump truck and several thousand dollars' worth of jewelry that he failed to include as personal property on the 2015 list of estate assets. The unchallenged findings establish that Alex "mismanaged at least $100,000 in Estate assets" by not reporting them.

The unchallenged findings of fact also establish Alex's improper use of insurance proceeds from a burglary at Emilie's property. The findings state that Alex received $26,331.08 in insurance proceeds for items he claimed were stolen from the house, including reimbursement for several hand-carved statues that were not stolen. Alex received the reimbursement funds on a debit card. The findings support the trial court's conclusion that "Alex acted improperly in connection with his actions regarding the insurance claims he filed on Emilie's

behalf and the $26,331.08 in proceeds he received but did not report on the Estate Inventory or in the 2017 Accounting."

We conclude that the unchallenged findings of fact support the trial court's decision to remove Alex as PR under RCW 11.28.250.

Evidentiary Rulings

Alex challenges a number of evidentiary rulings. Because the findings of fact and conclusions of law may have a preclusive effect on any future proceedings, we address the rulings.

"A trial court's decision to admit or exclude evidence lies within its sound discretion." Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004). We will not overturn evidentiary rulings unless the trial court manifestly abuses its discretion or bases its decision on untenable grounds or reasons. Int'l Ultimate, 122 Wn. App. at 744; Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A trial court's decision is manifestly unreasonable if it adopts a view no reasonable person would take. Mayer, 156 Wn.2d at 684. A decision is based on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on unsupported facts. Mayer, 156 Wn.2d at 684; Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010).

Personal Health Information

Before trial, the court granted Alex's motion to limit the scope of the trial to accounting issues only and to preclude discovery of Emilie's personal health information. However, during the trial, Alex elicited testimony that "opened the

door" to personal health information and the court allowed Susanne to question those witnesses about Emilie's dementia diagnosis. Those witnesses included a Charles Schwab financial consultant who testified about Emilie's "comfort" during participation in her financial affairs, a caregiver who testified about Emilie's independence, and Alex's testimony about using a computer to review financial documents with Emilie.

Alex contends the testimony did not "open the door" and that the trial court erred in its admission of personal health information. Specifically, Alex claims the court improperly relied on the 2009 geriatric assessment of Emilie as well as her death certificate "to conclude that she was the subject of [his] undue influence." Susanne argues the trial court properly concluded Alex opened the door to the testimony when he attempted to elicit "back door" testimony as to Emilie's capacity. We agree with Susanne.

" '[A] party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's evidence.' " State v. Jones, 144 Wn. App. 284, 298, 183 P.3d 307 (2008) (quoting KARL B. TEGLAND, 5 WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 103.14, at 66-67 (5th ed. 2007)); see Taylor v. Intuitive Surgical, Inc., 187 Wn.2d 743, 766, 389 P.3d 517 (2017); Ang v. Martin, 118 Wn. App. 553, 561-62, 76 P.3d 787 (2003). At trial, in response to questions by Alex, a Charles Schwab financial planner testified that Emilie appeared comfortable during financial conversations at her office. The trial court found a reasonable inference that Alex elicited this testimony to suggest that Emilie was in agreement with and/or understood the

nature of those discussions. The trial court warned Alex, "If you want to offer or extract information about Emilie's mental state, agreement, participation, deference, and all the rest you may do so, but you do so at your own peril." Alex then asked Emilie's caregiver about Emilie's independence. The court ruled that the question "implies a great deal of things, other than one's ability to walk or brush teeth or do something like that. It implies one's ability to resist outside influences."

Despite repeated warnings from the trial court, Alex testified that he used a computer to review Emilie's financial documents with her. He claimed that they "reviewed a lot of her financial documents" on the computer. On cross-examination, Alex testified he used a computer to show Emilie her financial information "[b]ecause she was curious about it." When asked whether Alex expected Emilie to understand the financial documents, he replied, "I explained them to her. Whether or not she understood them, I have no idea." At this point, Susanne argued and the trial court agreed that Alex had "opened the door" to admit personal health information related to Emilie's mental capacity. The court ruled, "This now is proper inquiry to examine the most recent testimony of why this witness would have no idea."

The trial court did not abuse its discretion in ruling that the testimony about Emilie's comfort, independence, and ability to understand her financial documents "opened the door" to previously excluded evidence of her dementia and Alzheimer's disease.

Designation of Accounts

Alex claims the trial court erred in characterizing account beneficiary designations and rights of survivorship as inter vivos gifts. Alex contends the court therefore improperly shifted the burden to him to prove that he did not unduly influence Emilie. The trial court concluded the KeyBank and Charles Schwab accounts "are presumed gifts obtained by fraud or undue influence."

In a will contest, the challenger must prove by clear and convincing evidence the existence of undue influence. White v. White, 33 Wn. App. 364, 369, 655 P.2d 1173 (1982). The burden shifts to the recipient of a gift when he has a confidential or fiduciary relationship with the donor. In re Trust & Estate of Melter, 167 Wn. App. 285, 296, 273 P.3d 991 (2012). The recipient of a gift between persons in a confidential relationship must prove the lack of undue influence by clear, cogent, and convincing evidence. McCutcheon v. Brownfield, 2 Wn. App. 348, 357, 467 P.2d 868 (1970). Designation as a beneficiary on an account "is not an inter vivos gift because the designation is 'merely a means of transmitting property at death' and the beneficiary has no rights before" that death. In re Estate of Langeland, 177 Wn. App. 315, 330, 312 P.3d 657 (2013) (quoting Francis v. Francis, 89 Wn.2d 511, 514, 573 P.2d 369 (1978)).

The trial court found that the KeyBank and Charles Schwab accounts were inter vivos gifts. We agree the KeyBank accounts are inter vivos gifts but not the Charles Schwab accounts.

11

1)  KeyBank Accounts

Alex claims that he is a designated beneficiary of Emilie's KeyBank accounts because he is a joint owner with right of survivorship.  The court ruled that the accounts did not carry the right of survivorship and characterized them as inter vivos gifts.

When a party challenges a trial court's findings of fact, we limit our review to determining whether substantial evidence supports the findings.  Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 425, 10 P.3d 417 (2000).  "Substantial evidence" is defined as " 'a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.' "  Korst v. McMahon, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

Expert Testimony

Susanne's expert testified that the majority of Emilie and Alex's joint KeyBank accounts did not carry the right of survivorship.  Rather than pass directly to Alex, the accounts should have gone into the estate as assets.

Alex called KeyBank employee Tricia Kauffman as an expert.  She testified that joint KeyBank accounts always have a right of survivorship.  The trial court discounted Kauffman's testimony because she testified as to her personal opinion and individual knowledge rather than on behalf of KeyBank and because she lacked personal knowledge of the accounts at issue, "which were opened long before she had ever been employed by Key Bank."

Judgment as to the credibility of witnesses and the weight of the evidence is the exclusive function of the finder of fact. Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009). An appellate court may not reweigh the evidence and substitute its own judgment. Quinn, 153 Wn. App. at 717. Substantial evidence supports the court's finding that the KeyBank accounts did not carry the right of survivorship.

KeyBank Document

Alex also offered to admit a document from KeyBank reflecting that all of its joint accounts carry a right of survivorship. Kauffman testified she saw the document for the first time during a deposition a few days earlier. Kauffman received the document in an e-mail from a KeyBank custodian of records. Susanne objected for lack of foundation. Susanne argued Kauffman had no knowledge of the preparation of the document or its maintenance in the regular course of business. The trial court denied admission of this evidence for lack of personal knowledge. Alex assigns error to this ruling, arguing the court abused its discretion.

Under the Uniform Business Records as Evidence Act, chapter 5.45 RCW, "[i]t is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation." Cantrill v. Am. Mail Line, Ltd., 42 Wn.2d 590, 608, 257 P.2d 179 (1953); see RCW 5.45.020; see also State v. Iverson, 126 Wn. App. 329, 337-38, 108 P.3d 799 (2005). Because Kauffman did not see the document until she received it in an e-mail before the

deposition taken a few days before she testified and did not have custody of the record as a regular part of her work, the trial court did not abuse its discretion in ruling that the document was not admissible.

### 2) Charles Schwab Accounts

In contrast to the KeyBank accounts, the record shows that Emilie designated Alex as her beneficiary on death for two Charles Schwab accounts. Therefore, the Charles Schwab accounts were not inter vivos gifts and the accounts properly transferred to Alex upon Emilie's death as a nonprobate asset. See Langeland, 177 Wn. App. at 330. The trial court erred in its characterization of the Charles Schwab accounts as inter vivos gifts and Alex was not required to prove "the validity of the beneficiary designation and the absence of undue influence" by clear, cogent, and convincing evidence. Langeland, 177 Wn. App. at 330.[2]

### Deadman's Statute

Alex contends that the trial court erred in excluding testimony under the deadman's statute, RCW 5.60.030. He claims that the statute does not apply because he is not "a party in interest" under the statute. However, Alex has waived review of this issue on appeal as he did not challenge his designation as a "party in interest" below.

"The deadman's statute, RCW 5.60.030, bars testimony by a 'party in interest' regarding 'transactions' with the decedent or statements made to him by

---

[2] Because unchallenged findings support the court's removal of Alex as PR, the court's error is harmless.

the decedent." In re Estate of Lennon, 108 Wn. App. 167, 174, 29 P.3d 1258 (2001). RCW 5.60.030 states:

> [A] party in interest or to the record . . . shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.

Alex planned to introduce testimony that Emilie was aware and approved of many of the transactions in controversy. Susanne moved in limine under this statute to prevent Alex from testifying as to his conversations with Emilie regarding the expenses and transactions listed in the accounting. In her motion in limine, Susanne argued that RCW 5.60.030 precludes a "party in interest" from testifying "about transactions with or statements made by a decedent" and argued:

> Alex Forderer is a party in interest both as personal representative of the Estate and as one of its heirs. There can be no dispute that he stands to gain or lose from a judgment in this action, as Susanne is seeking his removal and directly challenging his actions while acting as attorney-in-fact and as PR of the Estate.

In response, Alex argued that Susanne sought to "inject improper evidence and unsupported innuendo" through a "sham" motion under RCW 5.60.030. Alex also argued Susanne waived application of the statute because "[b]y submitting Alex Forderer's testimony as to what his mother wanted, and following her wishes, the petitioner has waived the right to complain about it here." The trial court granted the motion in limine and barred Alex and his wife "from testifying as to any transactions with or statements made by Emilie Forderer regarding the 2017 Court-ordered accounting, pursuant to RCW 5.60.030."

Although Alex made a general objection to Susanne's motion in limine, he did not object to her assertion that he was a "party in interest." "Even if an objection is made at trial, a party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." DeHaven v. Gant, 42 Wn. App. 666, 669, 713 P.2d 149 (1986); see also State v. Hamilton, 179 Wn. App. 870, 878, 320 P.3d 142 (2014); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Alex did not dispute that he was a "party in interest." Indeed, citing Lennon, he claimed that he was free to testify about his own feelings and impressions because "the deadman's statute does not prevent an interested party" from doing so. Because the trial court did not have a meaningful opportunity to consider the argument that Alex was not a "party in interest" under the deadman's statute, he has waived review of this issue on appeal.

Trial Court Award of Attorney Fees and Costs

Susanne and Alex submitted post-trial motions for attorney fees and costs. The court granted Susanne's motion under RCW 11.96A.150 of the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. The trial court denied Alex's motion under CR 68. Alex appeals these rulings.

RCW 11.96A.150

Alex contends the trial court abused its discretion by awarding Susanne an inequitable fee award based on a conclusory analysis. The record does not support his argument.

The court has discretion to award attorney fees and costs in a TEDRA action. RCW 11.96A.150. In exercising this discretion, the court "may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). An appellate court should not interfere with a trial court's fee determination unless facts and circumstances clearly show an abuse of the trial court's discretion. In re Estate of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004).

Here, the trial court awarded attorney fees to Susanne in the amount of $465,238.84 and costs of $92,352.02 for conferring a substantial benefit to the estate. The court awarded fees because Susanne established Alex's conflict of interest and misconduct warranting his removal as PR. The record shows that the trial court utilized a lodestar calculation and discounted Susanne's requested award due to unsuccessful litigation, duplicative charges, and excessive hours. Under the general terms of RCW 11.96A.150, this decision was well within the trial court's discretion.

CR 68

The trial court rejected Alex's motion for attorney fees and costs under CR 68. Alex claims Susanne did not improve her position at trial because she achieved the "sole" relief of his removal as PR. In contrast, he argues that Susanne would have had the benefit of his removal as well as a $58,000 judgment had she accepted the CR 68 offer. As a result, Alex contends he should have received his fees and costs for trial under CR 68. We disagree.

CR 68 requires the offeree to pay the costs incurred after a rejected offer "[i]f the judgment finally obtained by the offeree is not more favorable than the offer." When comparing a final judgment with a CR 68 offer, a trial court should " 'compare comparables.' " Magnussen v. Tawney, 109 Wn. App. 272, 275, 34 P.3d 899 (2001) (quoting Wilkerson v. United Inv., Inc., 62 Wn. App. 712, 717, 815 P.2d 293 (1991)). Determination of the prevailing party is a mixed question of law and fact; however, we review the issue under the error of law standard. Magnussen, 109 Wn. App. at 275.

The assessment of Susanne's position after trial turns on whether Alex's unconditional removal as PR is a more favorable outcome than his conditional agreement to removal and judgment of $58,000. Assessing the relative value of equitable relief and damages poses the challenge of "comparing apples and oranges." Andretti v. Borla Performance Indus., Inc., 426 F.3d 824, 837 (6th Cir.2005).[3] Despite this challenge, a majority of federal courts have recognized that "a favorable judgment and an injunction can be more valuable to a plaintiff than damages." Andretti, 426 F.3d at 837; see Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 231 (2d Cir. 2006); Liberty Mut. Ins. Co. v. Equal Emp't Opportunity Comm'n, 691 F.2d 438, 442 (9th Cir. 1982); Lish v. Harper's Magazine Found., 148 F.R.D. 516, 519-20 (S.D.N.Y. 1993).

In contrast to Alex's conditional offer to step down as PR, Susanne achieved unconditional removal of Alex. Had Susanne accepted the CR 68 offer, Alex could claim immunity and indemnification in the event the successor PR

---

[3] Because CR 68 is virtually identical to Federal Rule of Civil Procedure 68, the court may look to federal interpretation of an equivalent rule in the absence of controlling Washington authority. Johnson v. Dep't of Transp., 177 Wn. App. 684, 692 n.5, 313 P.3d 1197 (2013).

pursued an action against him for his dissipation of Emilie's assets and his mismanagement of the estate. The court did not abuse its discretion in ruling that Alex was not entitled to fees and costs under CR 68.

Attorney Fees on Appeal

Susanne requests attorney fees and costs on appeal under RAP 18.1 and RCW 11.96A.150. The court on appeal has discretion to award attorney fees and costs under TEDRA, RCW 11.96A.150. Because Susanne's defense of this appeal conferred a benefit on the estate, we exercise our discretion to award her attorney fees and costs subject to RAP 18.1.[4]

We affirm the decision of the trial court to remove Alex as PR under RCW 11.28.250.

_Brennan, J_

WE CONCUR:

_Dwyer, J._                    _Andrus, A.C.J._

---

[4] Alex also requests attorney fees under RAP 18.1, RCW 11.96A.150, and CR 68. The foregoing discussion of CR 68 applies to the request on appeal and Alex is therefore not entitled to attorney fees under that rule. Furthermore, Alex's waste of the estate and removal as PR make an award under RCW 11.96A.150 inappropriate.